# LOUISVILLE GAS & ELECTRIC COMPANY *v.* COLEMAN, AUDITOR.

No. 70. Argued October 26, 1927. Reargued February 29, 1928.—
Decided April 30, 1928.

Mr. Matthew O'Dogherty, with whom Mr. Alex P. Humphrey was on the brief, for plaintiff in error.

Mr. Clifford E. Smith, with whom Messrs. Frank E. Daugherty, Attorney General of Kentucky, and Charles F. Creal, Assistant Attorney General, were on the brief, for defendant in error.

The Fourteenth Amendment has never been so applied by this Court as to interfere with the States in adopting a system of taxation, or in making classifications of properties or objects for taxation. It is not a shield against every inequality or injustice that may result from unwise state legislation. It imposes no "iron rule of taxation" upon the States, but is only applied when there is such a clear discrimination as to amount to a denial of equal protection of the law or a deprivation of property without due process of law within the meaning of its provisions.

The opinion of the Court of Appeals of Kentucky in Middendorf v. Goodale, 202 Ky. 118, holding that the exemptions granted do not render the statute repugnant to the federal or state constitutions, is well fortified by authorities cited, especially as to the exemption of building and loan associations. None of the authorities cited bears directly on the application of the statute to mortgages where the indebtedness matures within five years. However, many of them sustain in principle the distinction or discrimination made as to such mortgages.

The reason for the distinction is as obvious as to one class as to the other. It will not be seriously contended

that an exemption might not have been granted as to mortgages securing indebtedness up to a certain fixed amount. It would not be difficult to find reasons for the exemption of mortgages as to so much of the indebtedness as does not mature within five years.

It is a matter of common knowledge that short term loans carry the highest legal rate of interest and often, directly or indirectly, usurious rates, whereas long term loans are secured at lesser rates, usually one-half to two per cent. less than the maximum legal rate. In view of this favorable interest rate, the tax on the long term loan is not a great burden or hardship, the tax amounting to only one-fifth of one per cent. for one year. And again, a mortgagor in securing a long term loan, secures his mortgaged assets to the extent of such loan and for the term thereof against all subsequent creditors and all debts or claims arising under contract or otherwise. We might add other reasons for the distinction, but the basis for it is too apparent to require elaboration.

Congress and federal courts recognize such a distinction between building and loan associations and other corporations as to warrant a discrimination in favor of the former in matters of taxation. See Corporation Excise Tax Act, Income Tax Act, War Revenue Act, *Central Building Co.* v. *Bowland*, 216 Fed. 526.

The rule of uniformity and equality prescribed by the Fourteenth Amendment only requires that the statute shall apply alike to all of a class under the same circumstances and conditions. The statute under consideration meets this rule. The courts have upheld statutes where the reason for classification or discrimination was no more apparent than they are here. *Pacific Express Co.* v. *Seibert*, 142 U. S. 339; *Citizens Telephone Co.* v. *Fuller*, 229 U. S. 322; *King* v. *Mullins*, 171 U. S. 404; *St. Louis Cons. Coal Co.* v. *Illinois*, 185 U. S. 203; *N. Y., N. H., & H. R. Co.* v. *New York*, 165 U. S. 628; *American Sugar Co.* v.

*Louisiana,* 179 U. S. 89; *Missouri Ry. Co.* v. *Mackey,* 127 U. S. 205; *Magoun* v. *Illinois Savings Bank,* 170 U. S. 283. *Federal Land Bank* v. *Crossland,* 261 U. S. 374, distinguished.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

The plaintiff in error, a Kentucky corporation, executed a deed of trust of property in that State to secure bonds amounting in the aggregate to $150,000,000, of which $18,805,000 were issued, bearing date November 1, 1922, and maturing November 1, 1952. The deed was presented to the clerk of the Jefferson county court for record and payment made of the lawful recording fee required by the state statute, but the clerk refused to record the deed unless plaintiff in error paid to him a tax of 20¢ on each $100 of the $18,805,000, as required by § 4019a–9 of the Kentucky statutes, Carroll's Edition, 1922, the pertinent portions of which follow:

"A tax of twenty cents (20¢) is hereby imposed upon each one hundred ($100.00) or fraction thereof of indebtedness which is, or may be, in any contingency secured by any mortgage of property in this state, which mortgage shall be lodged for record after this act goes into effect where the indebtedness does not mature within five years. . . .

." . . . provided, however, the provisions of this section shall not apply to mortgages executed to building and loan associations."

It is provided by another Kentucky statute that no deed or deed of trust or mortgage shall be valid against a purchaser for a valuable consideration without notice thereof or against creditors until such deed or mortgage shall be lodged for record. Ky. Stats., § 496. In view of this statute, plaintiff in error concluded that it was absolutely necessary to place the deed of trust of record,

36

and thereupon, unwillingly and under protest, paid the amount demanded in addition to the lawful recording fee.

Subsequently, plaintiff in error brought this action in the proper state court to recover the amount of the tax so paid upon the ground that the quoted provisions of § 4019a–9 were contrary to the Kentucky constitution requiring uniformity of taxes upon all property of the same class, and upon the further ground that these provisions denied the equal protection of the law and deprived plaintiff in error of its property without due process of law in contravention of the Fourteenth Amendment of the Federal Constitution. A demurrer to the petition was sustained by the court of first instance and the petition dismissed. Upon appeal to the state court of appeals, the judgment was affirmed, *sub nom. Louisville Gas & Electric Co.* v. *Shanks, Auditor,* 213 Ky. 762, upon the authority of *Middendorf* v. *Goodale,* 202 Ky. 118.

The state court of appeals, in disposing of the contention that the statute violated the state constitution, held that the tax imposed was not a property tax but a privilege tax, that is, a tax imposed upon the privilege of recording mortgages, etc., the payment of which, it was said, was entirely optional with the owners or holders thereof. This determination of the state court, in so far as it affects the challenge under the state constitution, we accept as conclusive, in accordance with the well-settled rule. *Merchants' Bank* v. *Pennsylvania,* 167 U. S. 461, 462. But the state court further held that the statute was not in conflict with the equal protection clause of the Fourteenth Amendment, and this presents a different question calling for our independent consideration and decision.

The contention on behalf of plaintiff in error is that the equal protection clause is contravened by the provisions exempting from the operation of the tax, first, indebtedness which does not mature within five years,

and, second, mortgages executed to building and loan associations.

The equal protection clause, like the due process of law clause, is not susceptible of exact delimitation. No definite rule in respect of either, which automatically will solve the question in specific instances, can be formulated. Certain general principles, however, have been established in the light of which the cases as they arise are to be considered. In the first place, it may be said generally that the equal protection clause means that the rights of all persons must rest upon the same rule under similar circumstances, *Kentucky Railroad Tax Cases,* 115 U. S. 321, 337; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, 293, and that it applies to the exercise of all the powers of the state which can affect the individual or his property, including the power of taxation. *County of Santa Clara* v. *Southern Pac. R. Co.,* 18 Fed. 385, 388–399; *The Railroad Tax Cases,* 13 Fed. 722, 733. It does not, however, forbid classification; and the power of the state to classify for purposes of taxation is of wide range and flexibility, provided always, that the classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415; *Air-way Corp.* v. *Day,* 266 U. S. 71, 85; *Schlesinger* v. *Wisconsin,* 270 U. S. 230, 240. That is to say, *mere* difference is not enough: the attempted classification "must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis." *Gulf, Colorado & Santa Fe Ry.* v. *Ellis,* 165 U. S. 150, 155. Discriminations of an unusual character especially suggest careful consideration to determine whether they are obnoxious to the constitutional

provision. Compare *Martin* v. *District of Columbia*, 205 U. S. 135, 139; *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232, 237.

While, for the purpose of determining whether the statute assailed violates the federal Constitution, we are not bound by the characterization of the tax by the state court, *St. Louis Compress Co.* v. *Arkansas*, 260 U. S. 346, 348, the matter is here of little importance. The application of the equal protection clause does not depend upon what name is given to the tax. Whether the tax now in question be called a privilege tax or a property tax, it falls in effect upon one indebtedness and not upon another where the sum of each is the same; where both are incurred by corporations or both by natural persons; where the percentage of interest to be paid is the same; where the mortgage security is identical in all respects; where, in short, the only difference well may be that one is payable in 60 months and the other in 59 months. No doubt the state may take into consideration as an element in fixing the *amount* of the tax the time within which the indebtedness is to be paid; for, since the tax is a flat sum covering the entire life of the lien, the privilege of recording the short-time lien and that of recording the long-time lien have different taxable values. But classification good for one purpose may be bad for another; and it does not follow that because the state may classify for the purpose of proportioning the tax, it may adopt the same classification to the end that some shall bear a burden of taxation from which others under circumstances identical in all respects save in respect of the matter of value, are entirely exempt.

Here it seems clear that a circumstance which affects only taxable values has been made the basis of a classification under which one is compelled to pay a tax for the enjoyment of a necessary privilege which, aside from the amount of the recording fee which is paid by each, is

furnished to another as a pure gratuity. Such a classification is arbitrary. It bears no reasonable or just relation to the intended result of the legislation. The difference relied upon is no more substantial, as the sole basis for the present classification, than a difference in value between two similar pieces of land would be if invoked as the sole basis for a like classification in respect of such property. Certainly one who is secured by the state in the priority of his lien for a period less than five years enjoys a privilege which in kind and character fairly cannot be distinguished from a like privilege enjoyed by another for a longer period of time. The former reasonably may be required to pay proportionately less than the latter; but to exact, as the price of a privilege which, for obvious reasons, neither safely can forego, a tax from the latter not imposed in any degree upon the former produces an obvious and gross inequality. If the state, upon the same classification, had reversed the process and taxed indebtedness maturing within a shorter period than five years, and exempted such as matured in a longer period, the inequality probably would be readily conceded, but the constitutional infirmity, though more strikingly apparent, would have been the same.

We are not dealing with a charge made for services rendered or a fee for regulation, but a tax in the strict sense of the term. It is said that it is a tax upon a privilege which the owner or holder of the instrument creating a lien is free to accept or reject. But for practical purposes there is no such option, for, as this Court recently held, there is a practical necessity to record such instruments because, if not recorded, the statute overrides them in favor of purchasers without notice and creditors; and the choice is like one made under duress. "The State is not bound to furnish a registry, but if it sees fit to do so it cannot use its control as a means to impose a liability that it cannot impose directly, any more than it can es-

cape its constitutional obligations by denying jurisdiction to its Courts in cases which those Courts are otherwise competent to entertain. *Kenney* v. *Supreme Lodge of the World*, 252 U. S. 411, 415." *Federal Land Bank* v. *Crosland*, 261 U. S. 374, 378.

The exemption of building and loan associations from the operation of the tax is a different matter. The equal protection clause of the Fourteenth Amendment does not preclude a state in imposing taxes from making exemptions, provided the power is not exercised arbitrarily. It may exempt the property of churches, charitable institutions, and the like; and it does not admit of fair doubt that, under the circumstances disclosed by the opinion of the court below in the *Middendorf* case, it has lawfully exempted building and loan associations. That court points out that a building and loan association under the Kentucky statutes must receive payments from members only and make loans to members only, in pursuance of a plan set forth. Money accumulated is to be loaned to members according to a rule of priority. The essential principle of such an association is mutuality. The purpose of the statute, the court below says, was to provide the members of the associations with the means of borrowing money for the acquisition of homes, in recognition of the duty of the state to encourage the acquisition of homes by its citizens. Such associations are also placed by the state statute in a separate class for purposes of *ad valorem* taxation. It is made clear by the lower court that the purpose of the exemption was to enable these associations, by relieving them of a burden, more completely to carry out the quasi-public purpose which the legislature designed in providing for their creation. This exemption, therefore, must be upheld; but, since the effect of the exemption first considered is to deny plaintiff in error the equal protection of the law in violation of the

equality provision of the Fourteenth Amendment, the court belowed erred in sustaining the validity of the tax and affirming the action of the trial court in dismissing the petition.

> *Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.*

MR. JUSTICE HOLMES.

When a legal distinction is determined, as no one doubts that it may be, between night and day, childhood and maturity, or any other extremes, a point has to be fixed or a line has to be drawn, or gradually picked out by successive decisions, to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the legislature must be accepted unless we can say that it is very wide of any reasonable mark.

There is a plain distinction between large loans secured by negotiable bonds and mortgages that easily escape taxation, and small ones to needy borrowers for which they give their personal note for a short term and a mortgage of their house. I hardly think it would be denied that the large transactions of the money market reasonably may be subjected to a tax from which small ones for private need are exempted. The Legislature of Kentucky after careful-consideration has decided that the distinction is clearly marked when the loan is for so long a term as five years. Whatever doubt I may feel, I certainly cannot say that it is wrong. If it is right as to the

run of cases a possible exception here and there would not make the law bad. All taxes have to be laid by general rules.

I think that the judgment should be affirmed.

MR. JUSTICE BRANDEIS, MR. JUSTICE SANFORD and MR. JUSTICE STONE concur in this opinion.

MR. JUSTICE BRANDEIS, dissenting.

Pursuant to power conferred by the Constitution of Kentucky, its Legislature imposed a recording tax of 20 cents per $100 upon mortgages given to secure loans which do not mature within five years from the date of the mortgage. The statute discriminates between long and short term loans as subjects of taxation. A loan maturing in 60 months or more would be subject to the tax, whereas one maturing in 59 months or less, but otherwise similar in all respects would not be. The distinction between long term and short term loans—with differences in yield for securities otherwise identical in character—is one familiar to American investment bankers and their clients. Did the Kentucky Legislature, in adopting that classification for purposes of the mortgage recording tax, exceed the bounds of that " wide discretion in selecting the subjects of taxation " which this Court sanctions, as declared in *Lake Superior Mines* v. *Lord*, 271 U. S. 577, 582, so long as the State " refrains from clear and hostile discrimination against particular persons or classes "?

Classifications based solely on factual differences no greater than that between a loan maturing in 59 months or less and one maturing in 60 months or more, have been sustained in many fields of legislation.[1] In *Citizens Tele-*

---

[1] A statute which fixed the maximum rate of fare on railroads more than 75 miles long, at 3 cents, but on railroads in all other respects similarly situated, at 5 cents if the line was between 15 and 75 miles

*phone Co.* v. *Fuller,* 229 U. S. 322, 329, it was said that in taxation there is a broader power of classification than in some other exercises of legislation. The cases dealing specifically with classification for purpose of taxation on a basis similar to that here employed, are not discussed in the opinion of the Court; and only one of them is cited. It seems desirable to call attention to some of them, as the rule which they declare is embodied in the tax systems of the Nation and of many States.

long, and at 8 cents if the line was 15 miles or less in length. *Dow* v. *Beidelman,* 125 U. S. 680, 690, 691. Compare *Chesapeake & Ohio Ry. Co.* v. *Conley,* 230 U. S. 513, 522. A statute which permitted railroads less than 50 miles in length to heat passenger cars by stove or furnace, but denied such permission to lines of 50 miles or more. *New York, New Haven & Hartford R. R. Co.* v. *New York,* 165 U. S. 628, 633. A statute which permitted railroads of less than 50 miles in length to be operated without a complete crew, but denied such permission to lines of 50 miles or more. *Chicago, Rock Island & Pacific Ry. Co.* v. *Arkansas,* 219 U. S. 453; *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Arkansas,* 240 U. S. 518, 520. An inspection law which applied to mines employing 6 or more men, but not to those employing 5 or less. *St. Louis Consolidated Coal Co.* v. *Illinois,* 185 U. S. 203, 207. A screen law which applied to mines employing 10 or more men, but not to those employing 9 or less. *McLean* v. *Arkansas,* 211 U. S. 539, 551. A statute requiring a washroom at mines where there was a request by 20 employees, but not at mines where by only 19. *Booth* v. *Indiana,* 237 U. S. 391, 397. Workmen's compensation laws which apply to employers of 4 or 5 men, but not to employers of less. *Jeffrey Manufacturing Co.* v. *Blagg,* 235 U. S. 571, 576; *Middleton* v. *Texas Power & Light Co.,* 249 U. S. 152, 159; *Ward & Gow* v. *Krinsky,* 259 U. S. 503, 516. A fire inspection law which applied to hotels with 50 or more rooms, but not to hotels with 49 or less. *Miller* v. *Strahl,* 239 U. S. 426, 434. A law which required the licensing of physicians who during the preceding year had treated 11 or less persons, but not those who had treated 12 or more. *Watson* v. *Maryland,* 218 U. S. 173. An ordinance which prohibited the keeping of a private market within 6 squares of a public one but not within 7. *Natal* v. *Louisiana,* 139 U. S. 621. A statute which prohibited the herding of sheep within

44

In *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, 300, 301, the inheritance tax, in the case of strangers to the blood, exempted estates of $500, but did not allow that exemption to larger estates.[2] Moreover, it prescribed

---

2 miles of a dwelling house, but not if a yard or more beyond. *Bacon* v. *Walker,* 204 U. S. 311. A law which prohibited the establishment of a carbon black factory within 10 miles of an incorporated town, but not if a rod more remote. *Walls* v. *Midland Carbon Co.,* 254 U. S. 300, 324. A statute permitting, in a suit against a corporation, a change of venue where it had more than 50 stockholders, but not if it had 50 or less. *Cincinnati Street Ry. Co.* v. *Snell,* 193 U. S. 30. Statutes exempting from certain requirements banks whose transactions average $500 or more. *Engel* v. *O'Malley,* 219 U. S. 128; *Dillingham* v. *McLaughlin,* 264 U. S. 370. A tax law providing for the forfeit of tracts of 1,000 acres or more, but which does not provide for forfeiting, under like circumstances, tracts of 999 acres or less. *King* v. *Mullins,* 171 U. S. 404, 435. A statute which fixed the number of peremptory challenges to jurors at 8, but allowed 15 in cities having a population of over 100,000 inhabitants. *Hayes* v. *Missouri,* 120 U. S. 68. Many other statutes involving the classification of cities according to population, under which a single resident more or less may affect vitally not only the power and duties of the municipality, but the rights and liabilities of persons resident therein. *Missouri* v. *Lewis,* 101 U. S. 22; *Budd* v. *New York,* 143 U. S. 517, 548; *Moeschen* v. *Tenement House Department,* 203 U. S. 583; *Northwestern, Laundry Co.* v. *Des Moines,* 239 U. S. 486, 495; *Marcus Brown Co.* v. *Feldman,* 256 U. S. 170, 198; *Packard* v. *Banton,* 264 U. S. 140, 143; *Radice* v. *New York,* 264 U. S. 292, 296.

2 Compare the statutory provisions in Arkansas, Crawford & Moses Digest, 1921, § 10221; Kansas, Revised Statutes, 1923, § 79–1501; Maryland, Bagby's Code, 1924, § 124; Michigan, Compiled Laws, 1915, § 14525; Nebraska, Session Laws, 1923, c. 187. See *In re Fox's Estate,* 154 Mich. 5. The more common type of statute which taxes only the amount above the exemption, e. g., Revenue Act of 1926, 44 Stat. 9, 69, likewise discriminates between different dollars. The constitutionality of such exemptions was affirmed as recently as *Hope Natural Gas Co.* v. *Hall,* 274 U. S. 284, 289. Compare *Minot* v. *Winthrop,* 162 Mass. 113; *Gelsthorpe* v. *Furnell,* 20 Mont. 299; *State* v *Alston,* 94 Tenn. 674; *In re Hickok's Estate,* 78 Vt. 259.

progressive rates, rising in steps with the amount of the gift and applying to the entire gift and not merely to the excess.[3] Under the law a legatee of $10,000, being subject to a 3 per cent. tax, would receive net $9,700, whereas a legatee of $10,001, being subject to a 4 per cent. tax on the entire legacy would receive net only $9,600.96. The Court held the classification reasonable, saying:

" The condition is not arbitrary because it is determined by that value [of the inheritance]; it is not unequal in operation because it does not levy the same percentage on every dollar; does not fail to treat ' all alike under like circumstances and conditions, both in the privilege conferred and the liabilities imposed.' The jurisdiction of courts is fixed by amounts. The right of appeal is. As was said at bar the Congress of the United States has classified the right of suitors to come into the United States courts by amounts. Regarding these alone, there is the same inequality that is urged against classification of the Illinois law. All license laws and all specific taxes have in them elements of inequality, nevertheless they are universally imposed and their legality has never been questioned."

The Court has likewise sustained a statute which imposed an *ad valorem* tax upon telephone companies with annual earnings of $500 or more, while exempting others similarly situated whose earnings were less than $500, *Citizens Telephone Co.* v. *Fuller,* 229 U. S. 322, 329; a statute which imposed a license fee upon " all persons "

---

[3] Compare *In re McKennan's Estate,* 27 S. Dak. 136, sustaining a similar provision in Laws 1905, c. 54. Even where such rates do not apply to the total amount but only to that over a certain excess, they seem to violate the standards now laid down by the Court. But since *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, and *Knowlton* v. *Moore,* 178 U. S. 41, 109, the validity of taxes of this type has no longer been open to doubt.

engaged in the laundry busines but exempted concerns employing not more than two women, and steam laundries, *Quong Wing* v. *Kirkendall*, 223 U. S. 59, 62;[4] an ordinance under which a $5 tax was laid upon merchants whose gross sales were $1,000, and a tax of $10 upon those similarly situated whose sales were $1,001, *Clark* v. *Titusville*, 184 U. S. 329, 331;[5] an ordinance which laid a tax of $1,000 upon theatres whose admission was $1 or more, but only $400 upon those similarly situated whose admission prices were less than $1 and more than 50 cents, *Metropolis Theatre Co.* v. *Chicago*, 228 U. S. 61, 69–70.[6]

In the light of these decisions, I should have supposed the validity of the classification made by the Legislature of Kentucky to be clear. Recognizing that members of

[4] For statutes exempting small producers, borrowers, etc., from license taxes of various sorts, compare Florida Revised Statutes, 1920, §§ 842, 843, 855; Georgia Code, 1926, § 993 (115) and (124); Carroll's Kentucky Statutes, 1922, §§ 4224, 4238; South Carolina Code, 1922, § 5188; Tennessee, Public Acts, 1923, p. 258 (mortgage registration tax); Virginia, Tax Bill, § 92½; West Virginia, Acts Extraordinary Session, 1919, c. 5. See *Los Angeles Gas & Electric Corporation* v. *Los Angeles*, 163 Cal. 621, 627; *Cobb* v. *Commissioners*, 122 N. C. 307, 312; *Pipe Line Co.* v. *Hallanan*, 87 W. Va. 396.

[5] For stepped taxes of this type, compare California Political Code, 1920, §§ 3376, 3379; Florida Revised Statutes, 1920, §§ 839, 850; Georgia Code, 1926, § 993 (53) and (54); Nebraska Compiled Statutes, 1922, § 681; New Hampshire Public Laws, 1926, c. 225, § 91; Oregon Laws, 1920, § 6883; Shannon's Tennessee Code, Supp. 1926, § 712, pp. 200, 206, 208, 227, § 717; Utah Compiled Laws, 1917, § 1271, as amended by Laws, 1925, c. 112; Virginia, Tax Bill, §§ 46, 46½, 109; Remington's Washington Compiled Statutes, 1922, § 3841, as amended by Laws, Extra Session 1925, c. 149; Wyoming, Laws 1925, c. 117, § 1. Compare *Saks* v. *Mayor of Birmingham*, 120 Ala. 190; *In re Martin*, 62 Kans. 638; *Gordon* v. *City of Louisville*, 138 Ky. 442; *State* v. *Merchants Trading Co.*, 114 La. 529; *Wayne Mercantile Co.* v. *Commissioners of Mount Olive*, 161 N. C. 121; *Salt Lake City* v. *Christensen Co.*, 34 Utah 38.

[6] Compare California Political Code, 1920, § 3380; Shannon's Tennessee Code, Supp. 1926, § 712, pp. 214, 220.

the legislature of the State which made the classification, and members of the court which sanctioned it, necessarily possessed greater knowledge of local conditions and needs than is possible for us, I should have assumed that this classification, which obviously is not invidious, was a reasonable one, unless some facts were adduced to show that it was arbitrary. Compare *Heisler* v. *Thomas Colliery Co.*, 260 U. S. 245, 255; *Clarke* v. *Deckebach*, 274 U. S. 392, 397. No such facts have been adduced by the Company. On the other hand, facts called to our attention by counsel for the Commonwealth and of which we may take judicial notice, *McLean* v. *Denver & Rio Grande R. R. Co.*, 203 U. S. 38, 50; *Sligh* v. *Kirkwood*, 237 U. S. 52, 61, show that the classification was adopted by the Legislature of Kentucky in an effort to equalize the tax burden incident to loans.

The mortgage recording tax is a feature of the revenue system of at least nine states.[7] Its purpose in all is substantially the same—to supply an effective means for reaching this form of intangible property, which is likely to evade taxation under the general property tax. The recording tax is commonly accompanied either by a complete exemption of mortgage securities from other property taxation or, as in Kentucky, by exemption of such

---

[7] Alabama, Acts 1903, p. 227; Kansas, Laws 1925, c. 273; Kentucky, Acts Special Session 1917, c. 11, § 9; Michigan, Acts 1911, p. 132; Minnesota, Laws 1907, c. 328, as amended by Laws 1913, c. 163, and Laws 1921, c. 445; New York, Laws 1906, c. 532, and Laws 1907, c. 340, amending Laws 1905, c. 729; Oklahoma, Session Laws 1913, p. 684; Tennessee, Acts 1923, p. 258, Acts 1925, p. 472; Virginia, Acts 1910, p. 488. See *State* v. *Alabama Fuel & Iron Co.*, 188 Ala. 487; *Middendorf* v. *Goodale*, 202 Ky. 118; *Union Trust Co.* v. *Common Council of Detroit*, 170 Mich. 692; *Mutual Benefit Insurance Co.* v. *County of Martin*, 104 Minn. 179; *People* v. *Ronner*, 185 N. Y. 285; *Trustees' Insurance Corporation* v. *Hooton*, 53 Okla. 530; *Pocahontas Consolidated Collieries Co.* v. *Commonwealth*, 113 Va. 108; *Saville* v. *Virginia Ry. & Power Co.*, 114 Va. 444,

securities from local taxation alone. As imposed in Alabama and New York, the states which first adopted it, the tax is levied at the same rate irrespective of the length of the loan. The obvious unfairness of such an arrangement, both to the short term borrower and to the State, has been one of the chief objections to adoption of the tax.[8] Other states, impressed with the general efficiency of the tax, have attempted to eliminate the unfairness produced by the flat rate. Thus, in Oklahoma, the rates are 2 cents per $100 for loans of less than 2 years, 4 cents where the loan is for 2 years or more, 6 cents where for 3 or more, 8 cents where for 4 or more, and 10 cents where for 5 or more.[9] In South Dakota, the tax was 10 cents per $100 per year or fraction thereof, with a proviso that in no event should the tax be more than 50 cents per $100.[10] Such taxes obviate only in part the objection urged against the flat rate tax, namely, that mortgages for a long term are taxed, proportionally, at a lower rate than those for a short. In Minnesota, which had originally enacted the flat rate tax,[11] a different expedient was devised. In 1913 it was provided that the tax should be 15 cents per $100 unless the loan was for more than 5.

---

[8] This objection to the flat rate tax was brought to the attention of the Kentucky commission of 1916 in a brief filed on behalf of the Louisville Real Estate Board, though the Board itself favored the flat rate plan. See letter of Mr. A. E. Holcomb criticizing the New York law, p. 41; letter of Mr. George Lord criticizing the Michigan law, p. 45. See also Report of Committee of National Tax Association on Taxation of Personal Property, 1911; Report of Minnesota Tax Commission, 1908, p. 165; Robinson, The Mortgage Recording Tax, 25 Pol. Sci. Q. 609.

[9] Oklahoma, Session Laws 1913, p. 684.

[10] South Dakota, Session Laws 1919, c. 113, repealed by Session Laws 1923, c. 110.

[11] Minnesota, Laws 1907, c. 328,

years, in which event the tax was to be 25 cents.[12] In Minnesota the discrimination between long and short term securities is thus 10 cents per $100; in Kentucky it is 20 cents. But the distinction and the reasons for it are substantially the same.

The mortgage recording tax was adopted in Kentucky only after the most serious consideration. It was part of the general system of taxation enacted in 1917 after investigations by two special tax commissions appointed to enquire into the particular needs of the State. In the reports of both commissions the fact that theretofore mortgage loans had largely escaped taxation was a subject of much consideration.[13] The first commission, which was appointed in 1912, submitted a preliminary report recommending an amendment to the state constitution so as to permit the classification of property for purposes of taxation and the application of different methods of taxation to different classes. The amendment proposed was submitted to the people and adopted. Kentucky Constitution, § 171. In December, 1913, the commission submitted its final report. It recommended, among other things, that mortgages, bonds and other choses in action " be taxed by a method which will bring them out of hiding ".[14] It submitted with the report a draft of a bill for the taxation of intangibles, but recommended that the bill should not be passed until the subject had received further study by another commission.

The second commission filed its report in 1916. Like the first commission, it adverted to the fact that " even in

---

[12] Minnesota, Laws 1913, c. 163. By Laws 1921, c. 445, the line of cleavage was changed from 5 years to 5 years and 60 days.

[13] Report of Kentucky Tax Commission, 1912–1914, pp. 70–97; Report of Kentucky Tax Commission, 1916, p. 6.

[14] Report, 1912, p. 10.

the case of mortgages numerous ingenious and decidedly reprehensible methods are resorted to, in order that the real owner of such securities may escape his lawful portion of the burden of taxes," and it recommended, among other things, the imposition of a mortgage recording tax.[15] This was passed at an extraordinary session of the legislature called " for the sole purpose of considering the subject of revenue and taxation," which remained in session from February 14 to April 25, 1917. The legislation subjected different classes of intangible property to widely varying rates and supplemented the property taxes by license fees, including the mortgage recording tax here in question. It subjected credits secured by mortgage to the annual general property tax of 40 cents per $100 for state purposes but exempted them from local taxation; imposed the mortgage recording tax; and retained a statute then in force laying a flat recording tax of 50 cents on all mortgages (except chattel mortgages for less than $200). Kentucky Statutes, Carroll's 1922 edition, § 4238. We are told that the commission and the Legislature concluded that the taxes imposed by the several statutes would, in view of facts to be stated, approximately equalize the pro rata amount of taxes to be paid on loans secured by mortgage, taking account of the difference in the dates of maturity. In determining whether the equal treatment required by the Federal Constitution has been afforded we must, of course, consider all the statutes operating upon the subject matter. *Farmers & Mechanics Savings Bank* v. *Minnesota,* 232 U. S. 516, 529; *Interstate Busses Corporation* v. *Blodgett,* 276 U. S. 245.

In Kentucky local reasons exist for treating long term mortgage loans somewhat differently from those for a

---

[15] Report, 1916, pp. 6, 10. In a brief submitted to the Tax Commission, the Louisville Real Estate Board had urged the enactment of a recording tax of 50 cents per $100, applicable only to mortgages of real estate.

short term. There is among those loans which are secured by mortgages of real or personal property, and hence require registration, commonly a marked difference in the character of the short term and the long term loans.

Probably 90 or 95 per cent of the short term loans are evidenced by promissory notes payable to the lender. The larger part are for amounts less than $300, many of them maturing within a few months and providing for the payment of interest in advance. Another large part consists of loans secured by mortgage upon the residence of the borrower and made for domestic purposes. On the other hand, the long term loans are commonly evidenced by coupon bonds; are issued for large amounts; and represent borrowings for business purposes. The rate of interest on short term mortgage loans is generally higher than that on long term loans of equal safety, in part for the following reason. Because the short term loans are usually evidenced by promissory notes payable to the lender, the registration of the mortgage discloses the identity of the holder of the notes; and he is commonly subjected to the tax of 40 cents per $100 imposed by law upon all mortgage loans.[16] Because the long term loans are commonly represented by negotiable coupon bonds and are secured by a deed of trust, registration does not disclose to the assessors who the holders of the securities are, and they frequently escape taxation thereon. Laying the mortgage recording tax only upon the long term loans tends in some measure to reduce the disadvantage under which the short term borrower labors.

At what point the line should be drawn between short term and long term loans is, of course, a matter on which even men conversant with all the facts may reasonably differ. There was much difference of opinion concerning this in the Kentucky Legislature. The bill, as recom-

---

[16] Acts Special Session, 1917, c. 11, § 1. By Acts 1924, c. 116, § 1, the rate was raised to 50 cents.

52

mended by the Tax Commission, and as introduced in the House, exempted from the tax here in question only such mortgages as secured indebtedness maturing within three years; and it imposed a tax of 25 cents for $100.[17] In the House, the bill was amended so as to exempt loans maturing in less than five years.[18] In the Senate, the House bill was amended so as to reduce the period to three years.[19] The House refused to concur in the Senate amendment.[20] The Senate receded; [21] and thereupon the bill was passed granting the exemption of loans maturing within five years, but with the rate reduced to 20 cents.[22] Thus, we know that in making this particular classification there was in fact an exercise of legislative judgment and discretion. Surely the particular classification was not such " as to preclude [in law] the assumption that it was made in the exercise of legislative judgment and discretion." See *Stebbins* v. *Riley,* 268 U. S. 137, 143. Whether the exercise was a wise one is not our concern.

That it was permissible for Kentucky, in levying its mortgage recording tax, to take account of the probability that certain types of mortgage would escape further taxation, is not open to doubt. *Watson* v. *State Comptroller,* 254 U. S. 122, 125. There is abundant proof that the legislature was justified in thinking that the bulk of the long term loans would escape the general property tax, while most of those for a short term would not. That the statute taxes certain long term loans which, because of their similarity in other respects to those for a short term, are likely to be subjected to the state property tax,

---

[17] Report, 1916, p. 35, House Journal, 1917 Special Session, p. 219.

[18] House Journal, p. 255.

[19] Senate Journal, pp. 152, 153.

[20] House Journal, p. 550.

[21] Senate Journal, p. 257.

[22] See Senate Journal, p. 153; House Journal, pp. 645, 649–650,

would not render the statute invalid even as applied to them. Compare *Citizens Telephone Co.* v. *Fuller,* 229 U. S. 322, 332. Wherever the line might be drawn, the statute would sometimes operate unjustly. But such occasional instances of injustice would not render the classification arbitrary. As was said in *Metropolis Theatre Co.* v. *Chicago,* 228 U. S. 61, 69, 70: "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific."

Moreover, the deed of trust here in question is not similar to the Kentucky mortgages maturing within five years. It is a deed of trust given by a public service corporation to secure $150,000,000 in thirty-year 5 per cent. coupon bonds of $1,000 each, the bonds to be issued from time to time, the initial issue being $18,805,000. The equality clause would not prevent a State from confining the recording tax to deeds of trust given to secure bonds of a public service corporation. Compare *Kentucky Railroad Tax Cases,* 115 U. S. 321, 338; *Bell's Gap Railroad Co.* v. *Pennsylvania,* 134 U. S. 232, 237; *Pacific Express Co.* v. *Seibert,* 142 U. S. 339, 351; *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89, 92; *Hatch* v. *Reardon,* 204 U. S. 152, 158. The characteristics of this deed of trust clearly furnish a basis for reasonable classification as compared with probably every mortgage exempted from the recording tax. If the statute as applied does not in fact discriminate in favor of any property of a like nature, there is not inequality in treatment. A "tax is not to be upset upon hypothetical and unreal possibilities, if it would be good upon the facts as they are." *Pullman Co.* v. *Knott,* 235 U. S. 23, 26. See *Crescent Oil Co.* v. *Mississippi,* 257 U. S. 129, 137, 138.

As Kentucky might lawfully have levied the recording tax only on deeds of trust securing bond issues like that

here involved and as there is no showing that there exist any similar deeds of trust securing loans for less than five years, no constitutional right of the plaintiff is invaded because the statute may also include loans actually similar to those exempted except in regard to their term, and which, because similar in fact, could not be treated differently from those exempt. *Clark* v. *Kansas City,* 176 U. S. 114, 117–118; *Aluminum Co.* v. *Ramsey,* 222 U. S. 251, 256; *Murphy* v. *California* 225 U. S. 623, 630; *Darnell* v. *Indiana,* 226 U. S. 390, 398; *Mountain Timber Co.* v. *Washington,* 243 U. S. 219, 242; *Roberts & Schaefer Co.* v. *Emmerson,* 271 U. S. 50, 54–55. One who would strike down a statute must show not only that he is affected by it, but that as applied to him, the statute exceeds the power of the State. This rule, acted upon as early as *Austin* v. *The Aldermen,* 7 Wall. 694, and definitely stated in *Supervisors* v. *Stanley,* 105 U. S. 305, 314, has been consistently followed since that time. In my opinion, it is sufficient alone to require affirmance of the judgment.

MR. JUSTICE HOLMES and MR. JUSTICE STONE join in this opinion.