AMERICAN PRESS CO., Inc., et al. v. GROS-
JEAN.

No. 315.

District Court, E. D. Louisiana, Baton
Rouge Division.

March 22, 1935.

Clement M. Moss, of Lake Charles, La.,
Taylor, Porter & Brooks, of Baton Rouge,
La., Deutsch, Kerrigan & Burke, of New
Orleans, La., Tucker & Mason, of Shreve-
port, La., Mouton & Davidson, of Lafayette,
La., Thornton, Gist & Richey, of Alex-
andria, La., Spencer, Gidiere, Phelps &
Dunbar, of New Orleans, La., Elisha Han-
son, of Washington, D. C., and Bennett C.
Clark, of St. Louis, Mo., for plaintiffs.

Gaston L. Porterie, Atty. Gen., of the
state of Louisiana, and Charles J. Rivet,
Sp. Asst. to Atty. Gen., for defendant.

Before FOSTER, Circuit Judge, and
DAWKINS and BORAH, District Judges.

BORAH, District Judge.

This is a suit in equity attacking the
constitutionality of Act No. 23 of the Gen-
eral Assembly of Louisiana of 1934, and
seeking to enjoin its enforcement. The nine
plaintiffs who have initiated this action are
Louisiana corporations, each of whom own
and publish 1 or more newspapers in
various cities of this state. The defendant
is the state official who is charged with the
duty of administering and enforcing the
provisions of this act and of collecting the
license taxes sought to be imposed thereby.
On motion of the attorneys for the plain-
tiffs, a District Court of three judges was
organized and convened to hear its applica-
tion for an interlocutory injunction, a pre-
liminary restraining order having been
granted after notice and hearing because
of the danger of irreparable injury being
caused to plaintiffs before a hearing could
be had and the matter determined on said
application for interlocutory injunction.
After a full hearing, at which evidence
was introduced in the form of affidavits and
argument had by counsel, the court is of
the opinion that defendant's plea to the ju-
risdiction should be dismissed, and that
plaintiffs' prayer for an interlocutory in-
junction should be granted, and makes the
following findings of fact and conclusions
of law:

Findings of Fact.

The verified pleadings and affidavits filed
herein show that the nine plaintiffs are Lou-
isiana corporations, each of whom own and
publish 1 or more newspapers in seven of
the principal cities of the state. In the ag-
gregate, 15 newspapers are published by the
plaintiffs and of that number all save 2 have
a circulation of more than 20,000 copies per
week within the state of Louisiana. There
are no newspapers, magazines, periodicals,
or other publications published within the
state of Louisiana having a circulation of
more than 20,000 copies per week except
the 13 newspapers owned and published by
petitioners. However, there are published
within the state of Louisiana 4 daily news-
papers having a circulation of but slightly
less than 20,000 copies per week, and these
newspapers, with but one minor exception,
compete with all of the newspapers pub-
lished by petitioners both as to circulation
and advertising. The same competition ex-
ists in a modified degree with reference to
the 120 weekly newspapers published in the
state, though none of them have a circula-
tion of as much as 20,000 copies per week.
In fine there are approximately 163 publi-
cations published in the state of Louisiana
that are engaged in the business of selling
and publishing advertising, and of that num-

ber the 13 newspapers owned and published by plaintiffs are the only ones sought to be taxed by this act.

The bill of complaint alleges and the affidavits show that there are six principal media of advertising, and that there was spent throughout the United States during the year 1933 for such advertising approximately the following:

(1) Newspaper advertising $453,000,000.00
(2) Magazine advertising.. 137,000,000.00
(3) Radio broadcast advertising ............ 57,000,000.00
(4) Outdoor advertising... 40,000,000.00
(5) Street car card advertising ............ 11,000,000.00
(6)Motion picture advertising—less than.... 10,000,000.00

Total....... $708,000,000.00

It further appears that in the state of Louisiana the revenue derived by these various media of advertising is in substantially the above ratio.

The newspapers in question and all newspapers in general derive their revenues almost entirely from moneys paid by regular subscribers or purchasers of said publications and from moneys paid for the insertion of advertisements therein. Of the income thus realized, that which is derived from circulation constitutes a substantial part of the total revenue though it falls far short of meeting the cost of production and varies materially in its ratio to advertising revenue with respect to particular publications. While it is undoubtedly true that volume of circulation is a factor to be considered in fixing advertising rates, it is only one of several factors. The character of circulation, the competitive conditions in the particular territory served by the newspaper, the economic conditions prevailing in the territory, and other factors are of great importance.

The statute complained of, Act No. 23 of the General Assembly of Louisiana of 1934, provides in section 1: "That every person, firm, association or corporation, domestic or foreign, engaged in the business of selling, or making any charge for, advertising or for advertisements, whether printed or published, or to be printed or published, in any newspaper, magazine, periodical or publication whatever having a circulation of more than 20,000 copies per week, or displayed and exhibited, or to be displayed and exhibited, by means of mov-

ing pictures, in the State of Louisiana, shall, in addition to all other taxes and licenses levied and assessed in this State, pay a license tax for the privilege of engaging in such business in this State of two per cent. (2%) of the gross receipts of such business."

It further provides in substance that all persons subject to said act shall, on the 1st day of October, 1934, and every three months thereafter, file with the supervisor of public accounts a sworn report showing the amount of gross receipts for its business during the preceding three months (except that the report due October 1, 1934, shall be for the period from August 1 to September 30, 1934), and shall accompany such report with a remittance of the amount of the tax due as shown thereby. The taxes become due on the last day of each quarter and bear interest from their due date at the rate of 1 per cent. per month. In the event it becomes necessary to enforce payment of any tax due under the act, the supervisor of public accounts is authorized to institute suit for the amount of the tax and interest, and may also include in such suit a demand for a penalty of 25 per cent. of the amount of the tax and interest, as attorneys' fees, which penalty is imposed upon any taxpayer against whom it is necessary to proceed, and shall be taxed as costs and included in the judgment rendered; execution of which judgment shall take place as provided by existing laws. In addition to this penalty, the act further provides in section 9 that:

"It shall be unlawful for any person, firm, association or corporation, required to file a report or to pay a tax by this Act or by any regulation issued under authority thereof, or any managing agent or officer of any such firm, association or corporation.

"(1) To fail, neglect or refuse to file the aforesaid sworn report at the time and in the manner and form prescribed, or to pay any tax due under this Act prior to its becoming delinquent; and

"(2) To make any false statement in said sworn report, or to make any false representations to the Supervisor of Public Accounts as to any tax levied by this Act.

"And any person violating any provision of this Act shall be deemed guilty of a misdemeanor and, on conviction, shall be fined not exceeding Five Hundred Dollars ($500.00) or imprisoned not exceeding six months, or both, at the discretion of the court, for each violation.

"As to corporations violating this Act, there shall be recovered, at the suit of the district attorney, an amount not exceeding Five Hundred Dollars ($500.00) for each violation."

The plaintiffs contend that this license tax is discriminatory and arbitrary and imposes upon plaintiffs burdens that are not imposed upon others engaged in like business in the state of Louisiana, and that because of the imposition of the unreasonable, arbitrary, and discriminatory license taxes provided by said statute it is violative of the provisions of section 8 of article 10 of the Constitution of Louisiana of 1921 which provides: "License taxes may be levied on such classes of persons, associations of persons and corporations pursuing any trade, business, occupation, vocation or profession, as the Legislature may deem proper, except clerks, laborers, ministers of religion, school teachers, graduated trained nurses, those engaged in mechanical, agricultural, or horticultural pursuits or in operating sawmills. Such license taxes may be classified, graduated or progressive."

It is further urged that the statute is in conflict with section 1 of the Fourteenth Amendment to the Constitution of the United States in that it denies to the plaintiffs the equal protection of the laws.

The constitutional invalidity of the statute is further assailed on the ground that it is violative of the provisions of section 3 of article 1 of the Constitution of Louisiana of 1921 that "no law shall ever be passed to curtail or restrain the liberty of speech or of the press." Furthermore, that it is violative of the provisions of section 1 of the Fourteenth Amendment to the Constitution of the United States that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty, or property, without due process of law," which amendment secures against state action that freedom of the press guaranteed by the First Amendment to the Constitution of the United States.

We find it necessary to consider only the first and second grounds of attack.

### Conclusions of Law.

Act No. 23 of the Louisiana Legislature of 1934 imposes a license tax on persons engaged in the sale of advertising. The act in terms applies only to those publications within the state having a circulation of more than 20,000 copies per week. If the weekly circulation of any publication is less than that amount, it is free from legislative restriction. It matters not what publications it may affect today or in the future, the express declaration of the statute is that publications having a circulation in excess of a certain amount shall be subjected to this regulation, and that all others having less circulation shall be free from its provisions.

The only question that need be considered is whether, in the restraint which the Legislature of Louisiana has attempted to impose upon these plaintiff companies, it has violated section 8 of article 10 of the Constitution of this state and trespassed upon those rights which by the Constitution of the United States are secured to every individual against state action.

We think that Act No. 23 of 1934 not only violates the Constitution of this state, but that it is also violative of the Fourteenth Amendment of the Constitution of the United States in that it does not represent a legitimate exertion of the power of classification, is purely arbitrary, and denies the legal protection of the laws to those against whom it discriminates. Its constitutionality cannot be upheld on the theory that the classification adopted by the Legislature is a rational one in that the newspapers in Louisiana having a circulation of 20,000 copies, or less, constitute a class of country journals, with little equipment, few employees, and small assets, which use methods of operation entirely different to the metropolitan newspapers operating in the state and having a circulation of more than 20,000 copies per week. The fact that there is a difference between the urban and metropolitan press is not sufficient to meet the requirement that the classification always "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." Louisville Gas Co. v. Coleman, 277 U. S. 32, 48 S. Ct. 423, 425, 72 L. Ed. 770; Stewart Dry Goods Co. v. John B. Lewis et al., 55 S. Ct. 525, 79 L. Ed. ——, decided March 11, 1935.

If the state, upon the same classification which it is seeking to uphold, had reversed the process and taxed the country journals and exempted the metropolitan newspapers, the inequality probably would be readily conceded, but the constitutional infirmity,

though more strikingly apparent, would have been the same.

■ While recognizing the power of the state to classify for purposes of taxation, it must also be remembered that the equal protection of the laws is guaranteed, and that such equal protection is denied where as here the act makes positive and direct discrimination between persons engaged in the same class of business. No one will presume to say that a newspaper whose circulation is 20,000 copies per week is not doing precisely the same business as one whose circulation is slightly below that figure.

Let a decree be prepared and presented in accordance herewith.