Kane, J.
(dissenting). As the majority notes, a heavy burden is cast upon one who challenges the constitutional validity of a revenue measure on the ground that it is violative of the equal protection clause of both the United States Constitution (US Const 14th amend) and the New York State Constitution (NY Const, art I, § 11). Indeed, we all agree that to pass constitutional muster “the classification challenged [must] be rationally related to a legitimate state interest” (see, New Orleans v Dukes, 427 US 297, 303). Contrary to the majority, however, I am unable to conclude that the challenged classifications are rational.
*29 I turn first to a consideration of the classification between transferors who sell their real property for $1,000,000 or more and those who sell property for less than $1,000,000. In this regard, it should be noted that in order for a tax classification to be rational, not arbitrary, the classes must be so defined that those in similar circumstances are treated with at least approximate equality. Upon a mere cursory examination of the provisions of Tax Law § 1443, one can legitimately conclude that small profits may be taxed, while large profits may escape the tax. Furthermore, persons who make the same amount of profit from the sale of two similar pieces of real property may or may not pay a tax, depending only on the amount of consideration; namely whether that consideration be $1,000,000 or $999,999. Such a result does not even approximate equality. Of course, a State Legislature is free to establish taxable status without adherence to rigid rules (Carmichael v Southern Coal Co., 301 US 495, 509). But this power is not absolute and must rest on principles of fairness and equity since: “there is a point beyond which the State cannot go without violating the Equal Protection Clause. The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification ‘must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.’ Royster Guano Co. v. Virginia, 253 U. S. 412, 415; Louisville Gas & Electric Co. v. Coleman, 277 U. S. 32, 37; Air-Way Electric Appliance Corp. v. Day, 266 U. S. 71, 85; Schlesinger v. Wisconsin, 270 U. S. 230, 240; Ohio Oil Co. v. Conway, 281U. S. 146, 160.” (Allied Stores v Bowers, 358 US 522, 527.)
In this case, it seems to me the classification misses the mark. The classes created are suspect because they do not originate from other than natural circumstances. The differences are mere differences that do not exist apart from the statute. They are artificially created by the statute (Louisville Gas Co. v Coleman, 277 US 32, 37; see also, Metropolitan Life Ins. Co. v Ward, 470 US _, 105 S Ct 1676). Even if one accepts the majority’s conclusion that the Legislature may establish an exemption of $1,000,000 despite the resulting inequality in the amount of tax to be paid, the classification is still invalid for “classification good for one purpose may be bad for another; and it does not follow that because the state may classify for the purpose of proportioning the tax, it may adopt the same classification to the end that some shall bear a burden of taxation from which others under circumstances identical in all respects save *30 in respect of the matter of value, are entirely exempt” (Louisville Gas Co. v Coleman, 277 US 32, 38, supra).
Further, the attempted classification is purely arbitrary because, as established, it is not related to the purpose of the tax. The tax is, essentially, a tax on profits; it is not a property tax. Thus, the classification based on property value is not related to the subject matter of the tax. No one would deny the power of the Legislature to enact a 10% capital gain surcharge on every taxable transfer of real property in the State, but when such a tax statute arbitrarily treats similarly situated sellers of real property differently, in a discriminatory manner without rational basis to support the disparate treatment, it runs afoul of the equal protection clause. There is no argument advanced that inequality is justified for any economic or social policy reasons or that the tax is upon the competitive advantage of one group over the other, for, as has been demonstrated, those with large profits may escape the tax, while those in a so-called weak position may have to pay.
Moreover, any claim that the classification is founded upon ability to pay should be rejected when practical economic considerations are examined more closely. It cannot be denied that, pursuant to the statute, classification is based entirely upon the amount of the consideration, while the tax is computed solely on the amount of the gain. We should not indulge in the stereotyped assumption that a seller in the taxed class is better able to pay the tax than a seller in the exempt class, for the contrary may well be true. Such thinking is seriously flawed because when the tax imposed is based entirely upon the amount of gain realized, it is not rationally related to the seller’s ability to pay just because the sale price was over $1,000,000. A similar rationale may be found in Stewart Dry Goods Co. v Lewis (294 US 550), wherein the court held that ability to pay cannot be used as a justification for treating classes of taxpayers disparately if the bases for creating these classifications are not related to the ability to pay. This same case also addressed the concept of “administrative convenience” as supplying a rational basis for classification of taxpayers (id., at p 560). We need not concern ourselves with that argument in this case, for it is certain that, in any event, where applicable, the tax will be collected. It is statutorily mandated that no transfer of an interest in real property in New York State can be recorded in the appropriate land records unless the parties provide the recording officer with the applicable affidavit (furnished by the New York State Department of Taxation and Finance), showing *31 payment of the tentative tax due, or the State Tax Commission’s statement that no tax is due (Real Property Law § 333 [1-f] [a]).
There are additional grounds to invalidate the tax. In the determination of the quantum of “gain” on a particular transaction, the majority finds comfort in a recently promulgated regulation of the Department of Taxation and Finance which permits the inclusion of all customary, reasonable and necessary costs related to the acquisition and improvement of real property in the “original purchase price” so that the tax will be imposed only in case of a net profit (see, 20 NYCRR part 590). It should be noted, however, that “soft costs” related to selling are excluded from a determination of the “original purchase price” (Tax Law § 1440 [3]). These costs include such items as advertising, public relations and marketing, field office expenses, maintenance expenses, business taxes and warranty costs (see, 35 Syracuse L Rev 609, 615 [1984]). These expenses, which may be considerable, do not reduce the net gain subject to the tax and again offend the principle set forth in Stewart (supra). Additionally, in the statutory scheme the foreclosure of a mortgage can result in taxation of a party who has realized no gain (Tax Law § 1447 [3]; § 1440 [7]; see also, 35 Syracuse L Rev 609, 619-620 [1984], supra). For example, if a borrower obtains a mortgage loan in excess of the purchase price of the mortgaged property, defaults and the mortgage is foreclosed, the tax must be paid on the “gain” (Tax Law § 1440 [1], [3], [7]). If the borrower cannot pay the tax, the new transferee, such as a bank bidding in on foreclosure sale or any other third party, must pay the tax in order to record the referee’s deed (Real Property Law § 333 [1-f]).
Finally, the disparate tax treatment of condominium and cooperative developers on the one hand, and developers of subdivided residential realty on the other, is equally offensive under the tests applied above. Condominium and cooperative developments are not peculiar to urban areas. Indeed, cluster-type condominium development is encouraged for ecological as well as practical reasons (cf. Matter of Friends of Shawangunks v Knowlton, 64 NY2d 387, 393-396). The indiscriminate classification between developers of condominiums and cooperative dwellings, and developers of subdivided parcels with improved residences, lacks any rational basis in law or in logic (see, Weissman v Evans, 56 NY2d 458).
The tax violates the equal protection clause of both the United States Constitution (US Const 14th amend) and the New York State Constitution (NY Const, art I, § 11). Plaintiffs’ cross motion for such a declaration should therefore be granted.
*32 Judges Jasen, Meyer and Alexander concur with Judge Simons; Judge Kane* dissents and votes to reverse in a separate opinion; Chief Judge Wachtler and Judge Kaye taking no part.
Judgment modified, with costs to defendant, in accordance with the opinion herein and, as so modified, affirmed.

Designated pursuant to NY Constitution, article VI, § 2.