(No. 39026.—

GOOD HUMOR CORPORATION, Appellant, *vs.* THE VILLAGE OF MUNDELEIN *et al.*, Appellees.

*Opinion filed Sept. 28, 1965.—Rehearing denied Nov. 18, 1965.*

Thomas D. Nash, Jr., of Chicago, for appellant.

Overholser, Flannery & Dunlap, of Libertyville, for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

Good Humor, Inc. instituted this action against the Village of Mundelein and certain of its officials to enjoin the enforcement of an ordinance of the village. Andrew N. Korn and Katherine Korn, doing business as Kay's Mobile Freezerettes, were allowed to intervene as parties plaintiff. Judgment on the pleadings was entered in favor of the defendants, and Good Humor, Inc., hereafter plaintiff, has appealed. The case involves questions arising under the constitutions of the United States and of this State.

As originally adopted, the ordinance prohibited the peddling of food, ice cream and other similar products by vendors upon the streets and sidewalks of the village. After the complaint in this case was filed the ordinance was amended

to prohibit all peddling, which was defined as follows: "Peddle shall mean the selling, bartering or exchanging or the offering for sale, barter or exchange of any tangible personal property upon or along the streets, highways or public places of the Village or from house to house, whether at one place thereon or from place to place, from any wagon, truck, pushcart or other vehicle or from movable receptacles of any kind, but shall not include the delivery of any item previously ordered or the sale of items along delivery routes where the purchaser has previously requested the seller to stop and exhibit his items. Nor shall peddle be taken to include the solicitation of orders by sample where the goods are not delivered at the time the order is taken."

The complaint was thereafter amended to challenge the ordinance as amended. The answer of the defendants denied certain of the allegations of the complaint and asserted a lack of sufficient information to form a belief as to the truth of other allegations. But both parties moved for judgment on the pleadings, and the trial court decided the case upon the assumption that the truth of the factual allegations of the complaint was conceded. In this court both parties have apparently acquiesced in that assumption, and we shall consider the case upon that basis.

The complaint alleged that the plaintiff has been engaged in selling at retail "Good Humor" ice-cream bars and other ice-cream products, for more than 25 years, particularly in the city of Chicago and its suburbs. For the past 15 years it has engaged in business in the Village of Mundelein. In Illinois the plaintiff "sells its products in and along streets, highways and other public thoroughfares from a fleet of specially designed, sanitary, refrigerated, automotive trucks owned by it and which are of uniform type and equipment in charge of a single employe." The plaintiff's products are manufactured under rigid sanitary standards, and packed and distributed in individual paper wrappers or sealed containers. The complaint also alleged that the value of the

plaintiff's business "is dependent upon its right to vend or peddle its merchandise from its trucks along and upon the streets, highways, and public thoroughfares of the various cities, villages and other municipalities within the State of Illinois, including the Village of Mundelein." It asserted the invalidity of the ordinance, and prayed for an injunction restraining the defendants from enforcing it against the plaintiff or its employees.

The plaintiff does not contend that the selective exclusions of the ordinance make it discriminatory, and hence invalid. Its attack is based upon two propositions, first, that the General Assembly has not authorized the village to enact the ordinance, and second, that the ordinance deprives the plaintiff of its property without due process of law. In considering these issues we are not, of course, concerned with the wisdom or desirability of the ordinance.

We consider first the authority of the village to enact the ordinance. The General Assembly has granted municipalities the following relevant powers: "The corporate authorities of each municipality may regulate the use of the streets and other municipal property. * * * The corporate authorities of each municipality may prevent and regulate all amusements and activities having a tendency to annoy or endanger persons or property on the sidewalks, streets, and other municipal property. * * * The corporate authorities of each municipality may regulate traffc and sales upon the streets, sidewalks, public places, and municipal property. * * * The corporate authorities of each municipality may license, tax, regulate, or prohibit hawkers, peddlers, pawnbrokers, itinerant merchants, transient vendors of merchandise, theatricals and other exhibitions, shows, and amusements and may license, tax, and regulate all places for eating or amusement." Ill. Rev. Stat. 1963, chap. 24, pars. 11—80—2, 11—80—9, 11—80—20, 11—42—5.

It is the plaintiff's position that "[t]he authority of

the Village of Mundelein under the provisions of the Municipal Code to regulate the use of its streets and public ways does not empower the Village to enact an ordinance which completely prohibits plaintiff from using the Village streets in pursuit of its business." To support this position the plaintiff relies upon *Haggenjos* v. *City of Chicago*, 336 Ill. 573, and *City of Chicago* v. *McKinley*, 344 Ill. 297. In the *Haggenjos* case an ordinance which made it illegal to allow vehicles to stand at any time or for any length of time in certain downtown Chicago streets, was held invalid on the ground that it did not permit a reasonable time for unloading passengers and freight. In the *McKinley* case an ordinance which allowed a reasonable time for unloading, not to exceed 3 minutes for passengers and 30 minutes for freight, was sustained although, as the court pointed out, the ordinance amounted "to total prohibition of the use of the street for the parking or storage of vehicles." (344 Ill. at 302.) These cases stand for the proposition that the public streets exist to facilitate transportation and that activities essential to that end must be permitted. But that proposition does not aid the plaintiff. The present ordinance, which prohibits the use of the streets for sales, does not interfere with any essential incidents of transportation.

The authorities principally relied upon by the plaintiff thus fail to support its narrow reading of the power granted by the legislature. Moreover, that narrow reading, insofar as municipal power to regulate sales upon the public streets is concerned, has been rejected by this court. The situation was thus described in the notes of the 1941 Legislative Commission to Revise the Cities and Villages Act:

"The court in *People ex rel. Goldberg* v. *Busse*, 240 Ill. 338, 88 N.E. 831, declared that 'the power to regulate is not the power to prohibit,' but in *City of Chicago* v. *Rhine* (1936) 363 Ill. 619, 2 N.E.2d 905, 105 A.L.R. 1045, the court takes a different attitude. In this latter case a Chicago ordinance prohibiting sales of any articles except news-

papers upon the streets within a certain downtown area was held valid. The court stated, after citing sections 9, 10, 14, 20, 41, and 102 of article 5 of the Cities and Villages act:

"From these several grants of power, and others not necessary to enumerate here, it is obvious that it was the legislative intent that cities and like municipalities should have the power to adopt ordinances tending to promote the general welfare of the public in the use of the streets. It was not necessary that the power be derived from a single grant but it may rest on several grants, (*City of Chicago* v. *Arbuckle Bros.* 344 Ill. 597, 176 N.E. 761), and the right to regulate sales upon streets, sidewalks and public places *ipso facto* carries with it the authority not only to impose reasonable restrictions and regulations but even to suppress sales thereon. (*People ex rel. Johns* v. *Thompson,* 341 Ill. 166, 173 N.E. 137; *City of Chicago* v. *Collins,* 175 Ill. 445, 51 N.E. 907, 49 L.R.A. 408, 67 Am. St. Rep. 224.)' The *Busse* case, *supra,* was not mentioned. We believe the utterance of the court in the *Busse* case that the power to regulate is not the power to prohibit cannot be accepted as a general principle of law.

"Although the power to prohibit such sales probably could have been declared to have been derived from section 41 of article 5, *viz.* 'to license, tax, regulate, suppress and prohibit hawkers and peddlers', etc., it was declared instead to be a power necessarily incident to the power to regulate." Smith-Hurd Ill. Anno. Stat. chap. 24, par. 11—80—20. Historical Note.

It is thus apparent that the grant of authority to municipalities to regulate sales upon streets and other public property has not been construed, as the plaintiff suggests, to authorize the use of public property for the conduct of private business, subject only to regulation that falls short of prohibition.

While it may not be necessary, in view of the *Rhine* case, to comment upon any of the other relevant sources of

municipal authority, it is appropriate, we think, to consider the plaintiff's position with respect to the grant of power in section 11—42—5 of the Municipal Code to prohibit hawkers, peddlers, itinerant merchants and transient vendors of merchandise. The plaintiff asserts that this power is not absolute, and that to warrant complete prohibition there must be something detrimental in the character of the goods sold or in the manner of conducting the business. This contention is based upon language used in *City of Carrollton* v. *Bazette,* 159 Ill. 284. That case involved an itinerant merchant whose manner of conducting business was thus described by the court: "He opened a store, stocked it with various articles of merchandise and sold as other merchants do, and the only difference, aside from selling sometimes at auction, was, that his business was not permanent in the particular city or village in which, for the time, it was carried on." (159 Ill. at 295.) The court held that an ordinance which required him to pay a prohibitive license fee was invalid under the predecessor of the present section 11—42—5, since under that section there must be "in the character of the goods sold or in the manner of conducting the business, something detrimental to the public good, health, morality, comfort or convenience." (159 Ill. at 293.) So far as it is pertinent here, the *Bazette* case rested upon the proposition that there was nothing detrimental in the manner in which the business was there conducted. The itinerant merchant in that case conducted his business like any other shopkeeper. He did not use the public streets as his market place, nor did he travel from house to house. In the present case it is precisely the manner in which the plaintiff conducts its business that empowers the municipality to enact the ordinance.

We hold that the ordinance enacted by the village was within the powers delegated to it by the General Assembly, and we thus reach the plaintiff's contention that the ordinance deprives it of its property without due process of law.

The defendant's argument in support of this contention variously describes the ordinance as an attempt to legislate the plaintiff out of business, as a total prohibition of a useful and beneficial occupation, and as an attempt to suppress the plaintiff completely. These broad assertions are not helpful in the decision of the case. They assume the question at issue, for if the ordinance is valid the plaintiff does not conduct its business in a lawful manner. What is affected by the ordinance is no more than the plaintiff's method of distributing its products. The ordinance does not apply to "the delivery of any item previously ordered or the sale of items along delivery routes where the purchaser has previously requested the seller to stop and exhibit his items." So far as the plaintiff is concerned, what the ordinance prohibits is its use of the streets for the transportation of a traveling ice-cream store from place to place on the public streets in search of customers.

The assumed property right upon which the plaintiff's case against the validity of the ordinance is based is non-existent. As this court pointed out in *City of Chicago* v. *Rhine,* "The defendant had no property right in the use of any of the streets of Chicago for the location and maintenance of his business. He was therefore not deprived of liberty and property without due process of law * * *." 363 Ill. at 625; *cf. People ex rel. Lapice* v. *Wolper,* 350 Ill. 461.

Plaintiff cites certain cases from other jurisdictions in which ordinances prohibiting or regulating ice-cream vendors were held invalid: *Good Humor Corp.* v. *City of New York,* 290 N.Y. 321, 49 N.E.2d 153 (1943); *Trio Distributor Corp.* v. *City of Albany,* 2 N.Y.2d 690, 143 N.E.2d 329 (1957); *New Jersey Good Humor, Inc.* v. *Bd. of Comm'rs of Bradley Beach,* 124 N.J.L. 162, 11 A. 2d 113 (1940); *Frost Bar* v. *City of Shaker Heights,* 75 Abs. 358, 141 N.E.2d 245 (Ohio Ct. Comm. Pleas, 1956).

The *City of New York* case, a 4-3 decision, turned upon

the court's construction of the City Home Rule Law. The majority held that the authority delegated to the city by the legislature was not sufficiently broad to authorize an ordinance prohibiting the peddling of merchandise upon the highways, particularly since that activity had been recognized and regulated by general statutes adopted from time to time by the State legislature. In the *City of Albany* case, also a 4-3 decision, the ordinance that was held invalid required that a vendor who operated on public property and attracted children must be accompanied by an attendant whose sole duty was to keep a lookout for children and warn them of dangers. The majority reasoned that there was no showing that the special attendant would safeguard children more effectively than the single vendor, and also concluded that the statute was void for vagueness. In the *New Jersey Good Humor* case there was no specific legislative grant of power to prohibit peddling, and no attempt was made to support the ordinance upon considerations of public safety. The only grounds offered in support of the ordinance were that the prohibition was necessary to maintain "peace and quiet" for summer residents, and to eliminate competition with established shopkeepers. A majority of the court said that the ordinance did not bear a reasonable relation to the first ground and that the second did not justify municipal action. The ordinance involved in the *Frost Bar* case prohibited the sale of merchandise in the streets or other public places to individuals under eighteen years old and the sale to anyone of merchandise which might attract such children. The court held this classification invalid.

In our opinion these decisions are not in point. We conclude that the Village of Mundelein was authorized by the General Assembly to enact the ordinance, and that the ordinance is constitutional as applied to plaintiff.

The judgment of the circuit court of Lake County is therefore affirmed.

*Judgment affirmed.*