Rocking H. Stables, Inc., Greentree Stables, Inc., Happy Day Riding Academy, Inc., West Town Stables, Inc., and Little Acres Stables, Inc., Plaintiffs-Appellees, v. Village of Norridge, a Municipal Corporation, Defendant-Appellant.

Gen. No. 52,919.

First District, First Division.

February 17, 1969.

Bernard J. Hennessy, of Chicago (Schultz, Hennessy & McGrath, of counsel), for appellant.

Edward L. S. Arkema and Jack M. Siegel, of Chicago, for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a declaratory judgment proceeding brought by the owners of five livery stables located in and licensed by the defendant Village of Norridge. After a nonjury trial, the trial court entered a judgment order, which declared "unconstitutional, invalid and void" three Village ordinances which regulated the movement of horses and hayracks. The decree included the grant of a permanent injunction against the enforcement of the ordinances.

Defendant appeals and contends that the basic issue is whether defendant's ordinances, which were held to be unconstitutional and invalid by the trial court, are reasonable and constitutional and represent a proper ex-

ercise of the legislative authority granted it by the Illinois General Assembly and are in furtherance of its police power and obligation to preserve and maintain the general health and welfare of its citizens.

The three Village of Norridge ordinances in question are Nos. 89, 235 and 358, § 8–C. No. 89 provides:

"HAY RACKS PROHIBITED.

"No hay rack shall be operated or allowed to remain upon any street after the hour of 6:00 o'clock in the evening or before 6:00 o'clock in the forenoon."

Passed and approved November 23, 1955.

No. 235 provides:

"OTHER NUISANCES: It is hereby declared to be a nuisance for any person to ride horses on the Streets, Sidewalks, Alleys or Parkways of the Village."

Passed and approved May 10, 1961.

No. 358, § 8–C, provides:

"HOURS FOR BUSINESS: No person conducting a riding stable shall rent or let for hire any horse to be ridden during the time between sunset and sunrise of the following morning, sunrise and sunset to be determined by a standard calendar or almanac giving the time of sunrise and sunset of the day of such letting or hiring, nor shall any horse be permitted off the premises of the riding stable during the time between sunset and sunrise."

Passed and approved September 9, 1964.

The witnesses for the plaintiffs included the operator of each stable and a real estate appraiser, who testified that the total value of the five stable properties was $705,000. The Mayor and the Chief of Police of the de-

fendant Village testified as adverse witnesses under section 60 of the Civil Practice Act and also on behalf of the Village.

The Mayor, Joseph Sieb, as an adverse witness, testified that he was the Mayor at the time the three ordinances in question were enacted. On June 28, 1967, he conducted a meeting with the stable owners and told them the area in which they were operating had undergone considerable development so that stable traffic had become hazardous. The Village had received complaints regarding trampled lawns and horses being ridden upon sidewalks and, as a result, the three ordinances would be enforced. He had never made a study of what would be the proper regulations and provisions for safety on Lawrence Avenue or on East River Road with respect to the operation of a hayrack, nor had he ever received a report with respect to the subject. He stated that there was no minimum speed on Lawrence Avenue, and if the hayracks were lighted on the front and back, or if they were escorted by a car or a truck with flashing lights, they would still be a hazard on Lawrence Avenue because of the speed at which they travel.

The Mayor further testified that prior to the construction of the apartment buildings on Lawrence Avenue, there was no shoulder on the road, and that riders previously had used what is now the parkway to ride when leaving the Rocking H and adjacent stables; that with respect to Greentree Stables, a rider would only have to travel 50 feet to the center of the street, at which time he would be in the City of Chicago; that the same situation existed with respect to Happy Day Stables, where a rider travels a short distance to the intersection and is then in the Cook County Forest Preserve Trail.

Testifying for the Village, the Mayor stated that, in his opinion, any horse or horse-drawn vehicle on the street after dark becomes a hazard, as there is no identification visible to the motorists. Hayracks are usually iden-

tified with a lantern beneath the tailgate, and being slow-moving vehicles are difficult to see. He had received complaints from residents about manure being on the sidewalks in front of their homes. He had ordered barricades be placed on Lawrence Avenue so as to screen people riding horses from motor vehicles on Lawrence Avenue.

The Chief of Police, as an adverse witness, testified that he had been Chief for the last 15 years; that he had never made a study with respect to the operation of hayracks on public highways; that a flasher light on a vehicle has no effect on traffic approaching from the rear; and that Lawrence Avenue carries a heavy volume of traffic to O'Hare Field. As a witness for the Village, he testified that he had personally observed hayracks and horses being operated on the streets of the Village after dark for many years. The condition has changed in the past six or seven years, in that the area where the stables are located has been built up. The hayracks moved at about five miles an hour, and the horses travel about ten miles an hour. The hayracks normally operated in convoys of about three, and they are a hazard by reason of the speed at which they travel and the way they are lighted. The speed limit on Lawrence Avenue is 40 miles an hour, and a motorist would have to be between 50 to 75 feet from a hayrack before he would see it. He further testified that a motorist would be right on top of a horse before he could see it because there would be no lighting whatever. The barricades put on Lawrence Avenue by the Village, so that motorists would travel closer to the center of the street, reduced Lawrence Avenue to a 3-lane road.

Roy Wiberg, the operator of Happy Day Riding Academy, testified that he had about 100 stalls. He had approximately 40 horses for boarding and operated five hayracks. During the time that he had been operating (since 1957), only one hayrack had been involved in an

183

accident. The greatest amount of hayrack rides occurred from 8:00 to 10:00 in the evening. Saturday night was the heaviest night for hayrack operations, and these usually occur from 6:00 in the evening until midnight. The hayracks are lighted with flashpots on both sides and back, but the horses do not carry any lights. Horses leaving the Happy Day Stables had to travel only 50 feet to leave the Village. A large percent of his horses use the Cook County Forest Preserve riding trails, and if he could not permit horses to leave his premises after sundown, it might possibly put him out of business.

Herbert Holm, the operator of Rocking H Stables for the past 15 years, testified that he maintained about 65 horses and operated four hayracks; that most of the hayrack operations are conducted in the evening. His stable was situated on the north side of Lawrence Avenue at the corner of Greenwood and Lawrence. Horses leaving his stable travel approximately four to five blocks along the north side of Lawrence down to East River Road, which is controlled by an electric traffic signal, and enter the Forest Preserve Trail at that point. If the ordinances in question were enforced, his business would be greatly reduced, since boarders would not be able to ride their horses in the evening. On cross-examination he stated the horses and hayracks from his stable used Lawrence Avenue.

Peter Gaudio, operator of Little Acres Stables, testified that he has three hayracks which are used on Friday and Saturday nights and do not start until 7:00 in the evening, and if the present ordinances were enforced, he would be put out of businss.

The remaining two stable operators did not operate hayracks, and the ordinance in question would have little or no effect on their stables because of their locations.

The judgment order declared that the ordinances in question were "unconstitutional, invalid and void and of no effect," and granted "a permanent Writ of Injunc-

tion" enjoining the defendant Village and its "agents, servants and employees" from enforcing the ordinances in question.

In the consideration of defendant's contentions, it is noted that during oral argument the defendant Village conceded the invalidity of ordinance No. 235 and did not argue its merits. The pertinent portions were:

> "OTHER NUISANCES: It is hereby declared to be a nuisance for any person to ride horses on the Streets, Sidewalks, Alleys or Parkways of the Village."

As to the remaining ordinances in question (Nos. 89 and 358, § 8–C), it is defendant's contention that it had clear legislative authority to enact ordinances of the type held invalid in the instant case. Defendant asserts that a fair reading of sections 11–80–2 to 11–80–22 of the Cities and Villages Act (Ill Rev Stats c 24) clearly demonstrates that the Illinois legislature has conferred upon municipalities a general power and duty to regulate the use of streets and sidewalks and traffic upon streets and sidewalks within its geographical composition, and to restrain by ordinance the danger confronting the public from the use of its streets and sidewalks by plaintiffs' horses and horse-drawn vehicles.

Defendant argues that the evidence in this case clearly demonstrated the following: (a) that horses used for riding purposes use the streets of defendant to reach a riding trail in the Forest Preserve; that they move at a relatively slow rate of speed and, of course, are not lighted at night; (b) that the so-called hayrack vehicles use the streets of Norridge; that they move at the rate of six miles per hour; that they are usually on the streets after dark; and (c) that one of the defendant's streets used by horses and horse-drawn vehicles both day and night is Lawrence Avenue, which is a heavily traveled 4-lane through street with a speed limit of 40 miles per hour for motor vehicles.

Plaintiffs contend that the ordinances in question go well beyond the regulation of the public streets and are unreasonable and prohibitive. Plaintiffs state "that not a single accident on the public streets was offered in support" of the testimony of the Mayor and the Chief of Police in the claim of the Village that horses and horse-drawn vehicles on defendant's streets after dark are hazardous—"there was no testimony with respect to any contact between automobiles and horses. The only incidents cited were cases where riders were thrown by horses, not within the Village and not on Village streets, but on the Forest Preserve bridle paths. It is clear that the record falls far short of showing that the riding of horses on the public streets of the Village constitutes a nuisance in fact." The evidence shows conclusively that the peak traffic on Lawrence Avenue, the one street with which the Village seems most concerned, is reached between 4:00 p. m. and 6:00 p. m. In fact after 6:00 and on weekends there is no substantial traffic on Lawrence Avenue nor is there any evidence of any substantial traffic on any streets within the corporate limits after 6:00. . . . The record is absolutely devoid of any factual basis for prohibiting hayracks during the hours in question." Plaintiffs also note "the fact that some 12 years had elapsed between the enactment of the first ordinance in question and the effort to enforce the ordinances. The accidents that the Chief referred to were accidents that happened in the Forest Preserve beyond the Village jurisdiction."

Plaintiffs further argue that the trial judge specifically found that the ordinance in question bore no reasonable relationship to the public health, safety, morals and welfare, and that the ordinances imposed an impossible burden on the plaintiffs in the operation of their business and in effect prohibited the operation of the business without statutory authority and without a reasonable relationship to the public health, safety, morals and welfare.

186

 

After examining the authorities cited by each side on the issues here, we believe the following pronouncements are controlling:

> "The streets and alleys of a city are held in trust by the municipality for the use of the public, for purposes of travel thereon and as a means of access to and egress from buildings abutting thereon or lots adjacent thereto. . . . The right of the public to use the streets is the right to use them for purposes of travel in the recognized methods in which the public highways of the State are used. Any method of travel may be adopted by individual members of the public which is an ordinary method of locomotion, or even an extraordinary method, if it is not, of itself, calculated to prevent a reasonably safe use of the street by others." City of Chicago v. Collins, 175 Ill 445, 455, 51 NE 907 (1898).

> "Neither a municipal corporation nor the legislature may interfere, under the guise of a police regulation, with the liberty of the citizen in the conduct of his business, legitimate and harmless in its essential character, beyond a point reasonably required for the protection of the public. It is for the judiciary to ascertain and declare the limitation." Lowenthal v. City of Chicago, 313 Ill 190, 194, 144 NE 829 (1924).

> "The basic purpose of a street is to afford a way for traffic, both pedestrian and vehicular, to the public, and the public is rightfully entitled to the use of such thoroughfare free of all obstructions and impedimenta which tend to delay or obstruct traffic or annoy the public in the use of the streets. . . . Inasmuch as we hold that the city was acting within the terms of the legislative grants to it in enacting the ordinance about which the controversy has here arisen, the burden is upon the defendant to show

187

that the ordinance is unreasonable." City of Chicago v. Rhine, 363 Ill 619, 622, 2 NE2d 905 (1936).

In Good Humor Corp. v. Village of Mundelein, 33 Ill2d 252, 211 NE2d 269 (1965), the court said (p 255):

"We consider first the authority of the village to enact the ordinance. The General Assembly has granted municipalities the following relevant powers: 'The corporate authorities of each municipality may regulate the use of the streets and other municipal property. . . . The corporate authorities of each municipality may prevent and regulate all amusements and activities having a tendency to annoy or endanger persons or property on the sidewalks, streets, and other municipal property.

"We believe the utterance of the court in the Busse case [240 Ill 338] that the power to regulate is not the power to prohibit cannot be accepted as a general principle of law." (P 257.)

"We hold that the ordinance enacted by the village was within the powers delegated to it by the General Assembly, and we thus reach the plaintiff's contention that the ordinance deprives it of its property without due process of law." (P 258.)

"So far as the plaintiff is concerned, what the ordinance prohibits is its use of the streets for the transportation of a traveling ice-cream store from place to place on the public streets in search of customers.

"The assumed property right upon which the plaintiff's case against the validity of the ordinance is based is nonexistent. As this court pointed out in City of Chicago v. Rhine, 'The defendant had no property right in the use of any of the streets of Chicago for the location and maintenance of his business. He was therefore not deprived of liberty and

property without due process of law . . . .' "
(P 259.)

"In determining issues similar to the situation here presented, we have adhered to the rule that regulation must be a reasonable exercise of the authority granted. . . . The regulation of city streets is an ever changing problem. No final or absolute rule can be laid down to determine reasonableness, . . . but the circumstances of each particular situation, viewed in the light of the purpose sought to be accomplished, must be weighed." Chicago Nat. Bank v. Chicago Heights, 14 Ill2d 135, 138, 150 NE2d 827 (1958).

 From the foregoing authorities, we think it is clear that public streets exist to facilitate transportation, and activities that interfere or prevent that end should be controlled or not permitted in a proper case. After considering the evidence here, we conclude that the use of horses and hayracks in the manner detailed might properly be viewed as an amusement and an activity having a tendency to endanger persons on the streets of the Village. We also conclude that the assumed property rights, which plaintiffs assert would be practically prohibited by enforcement of the subject ordinances, are nonexistent. 33 Ill2d 252, 259, 211 NE2d 269.

██ ██ We believe that such regulation as is undertaken by the Village in the subject ordinances is within the powers delegated to the Village by the General Assembly to regulate the use of streets in promotion of the general welfare. The determinative issue, therefore, is whether ordinances Nos. 89 and 358 are reasonably designed to achieve this end. In our view of the evidence, the ordinances are unreasonably sweeping in limitations of time and area. There is no indication that the Lawrence Avenue traffic conditions are prevalent on all of the Village streets or that the entire period of proscription is required. Neither the Mayor nor the Police Chief made

189

any study of what would be proper regulations and provisions for safety of Lawrence Avenue or the use of other streets, or whether a more limited period of time might accomplish the basic purpose of eliminating or reducing a traffic hazard. There is no substantial showing that it was necessary that ordinance No. 89 apply to all Village streets or that the time limitations of ordinance No. 358, § 8–C, was required in the entire Village. We conclude that the record shows that these ordinances, as enacted, are not reasonably designed to promote the general welfare of the public in the use of streets.

Although we find that Village ordinances Nos. 89 and 358 were within the powers delegated to the Village by the General Assembly, we hold they do not meet the test of reasonableness in their time limitations and area covered. Therefore, the judgment order which declared Village ordinances Nos. 89, 235 and 358 void and granted a permanent injunction against their enforcement is affirmed.

Affirmed.

ADESKO, P. J. and BURMAN, J., concur.