(Nos. 67723, 67748 cons.—

TRIPLE A SERVICES, INC., *et al.*, Appellees, v. FRED RICE, Superintendent of Police of the City of Chicago, *et al.*, Appellants.

*Opinion filed September 27, 1989.*

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Frederick S. Rhine, of counsel), for appellants Fred Rice and the City of Chicago.

Neil F. Hartigan, Attorney General, of Springfield (Earl L. Neal and Michael D. Leroy, Special Assistant Attorneys General, of Chicago, of counsel), for appellant State of Illinois Medical Center Commission.

Ronald F. Neville and Linda M. Mahalko, of Walsh, Neville, Pappas & Mahoney, and Mark J. Ballard, of Cannizzaro & Ballard, all of Chicago, for appellee Gilbert Vargas.

JUSTICE RYAN delivered the opinion of the court:

Plaintiffs, two mobile food vending companies and two mobile food salesmen, sued in the circuit court of Cook County, challenging the constitutional validity of a Chicago ordinance prohibiting mobile food vendors from conducting their businesses within a certain section of the city, almost entirely comprised of the Medical Center

District of Chicago (District). Plaintiffs sought declaratory judgment, injunctive and other relief against the City of Chicago and Fred Rice, superintendent of the Chicago police department. The State of Illinois Medical Center Commission intervened as an additional defendant. Following an evidentiary hearing, the trial court ruled for defendants. The appellate court reversed, with one justice dissenting (174 Ill. App. 3d 654), and held the ordinance invalid on two grounds. First, the appellate court held the ordinance violative of due process and equal protection principles in that it is overbroad and is not reasonably related to a legitimate governmental purpose. Second, the appellate court found that the enactment of the ordinance constituted a revocation of plaintiffs' food-dispensing licenses, for which plaintiffs were entitled to, but did not receive, prior notice and a due process hearing. We granted defendants' petitions for leave to appeal (107 Ill. 2d R. 315), and now reverse the appellate court.

Plaintiffs Triple A Services, Inc., and Thunderbird Catering are mobile food vending companies engaged in the business of selling prepared foods to motorists and pedestrians within the District. Plaintiff Gilbert Vargas is a driver-salesman for Triple A, and plaintiff Nicholas Garcia is a driver-salesman for Thunderbird. Plaintiffs operate their businesses under mobile food dispenser licenses issued annually by the City of Chicago. The licenses permit plaintiffs to operate mobile food vendor businesses throughout the city, subject to Federal, State and local law.

In 1941, the General Assembly created the District by the Medical Center District Act (Ill. Rev. Stat. 1987, ch. 111½, par. 5001 et seq.). The preamble to the Act (1941 Ill. Laws 304) explains that the District was established around a center of medical activity on Chicago's near west side. Because of the general deterioration of the

area, encompassing a number of medically related institutions, the General Assembly sought "to maintain the proper surroundings for a medical center and to stabilize and retain therein large private investments in hospitals, clinical and research facilities" by improving the condition of the surrounding territory. The General Assembly also sought to facilitate the future development and growth of medical and allied activity in the area surrounding these institutions. The District covers approximately one square mile. The Act additionally established the Medical Center Commission to manage and administer the District. (Ill. Rev. Stat. 1987, ch. 111½, pars. 5002 through 5018.) A large and diverse aggregation of hospitals, clinics and research facilities is currently in operation within the District.

On September 6, 1984, the Chicago city council enacted the ordinance here in question. The ordinance provides:

"No person shall conduct the business of a Mobile Food Dispenser or Peddler, as defined in this code, on any portion of the public way within the boundaries of the Medical Center District, to-wit: Ashland Avenue on the east, Congress Parkway on the north, Western Avenue on the west, and a line co-incidental with the north line of the property at or near 14th Street and 15th Street owned or used by the Baltimore and Ohio Chicago Terminal Railroad Company for railroad purposes, on the south. Nor shall any person operate, stop or park any vehicle on any portion of the public way for the purposes of conducting any such businesses.

Any person who violates the provisions of this Section shall be fined no less than $50.00 nor more than $500.00 for each offense." (Chicago Municipal Code §27—269.1.)

Plaintiffs then brought these actions challenging the constitutionality of the ordinance, and seeking to enjoin its enforcement. The complaints were consolidated. The trial court denied defendants' motion to dismiss and held

an evidentiary hearing, during which it heard the testimony of 15 witnesses.

Plaintiffs called three expert witnesses who testified to the effect that the operation of mobile food vending vehicles in the District has no adverse impact on medical activities in, or upon the essential atmosphere and character of, the District. Their testimony suggested that traffic in the District was moderate, and that the possibility of an increase in the number of hospital beds within the District in the foreseeable future is remote. Several employees and former employees of the corporate plaintiffs testified that neither mobile food vendors nor their customers obstruct the paths of pedestrians or emergency and other vehicles in the District. One of these witnesses testified that it takes approximately five or six years to establish a mobile food vending route. Plaintiff Vargas testified that he had operated his mobile food truck within the District for five years, and that he had not been given notice by the city that the ordinance would be considered. A former ambulance driver and attendant testified that the route of her ambulance had never been obstructed by a mobile food vehicle.

Plaintiffs called, as an adverse witness, an administrative aide to the Chicago city council committee on traffic control and safety. He testified that no studies or reports were received by the committee considering the ordinance, and that the committee considered the ordinance for "maybe three to four minutes." Plaintiffs also called, as an adverse witness, the coordinating planner for the city and the city's department of planning. He testified that planning objectives included the safe flow of traffic in the District and a "most professional looking environment for that Medical Center District." He added that mobile food vending was "primarily out of character with the Medical Center Commission's appearance and presentation to those coming into it."

Defendants called two expert witnesses. An urban planner testified that the protection of the investments of property owners in the District, who are "the major institutional base of hospitals and related facilities," was a consideration warranting the prohibition of mobile food vending within the District. He further testified that food vending did not fit aesthetically anywhere within the District. Defendants' other expert, who testified he had a background in public administration and planning, stated that the prohibition of mobile vending within the District would ensure the free flow of traffic to avoid or minimize vehicular or pedestrian conflicts, and to promote the security and appearance of the District. He further testified that he had observed a tendency of mobile food vendors to concentrate their business activities in heavy traffic areas, and that he objected to the presence of the vehicles on the basis of safety and appearance.

At the close of the evidence, the trial court entered judgment for defendants, finding that the purpose of the ordinance was to continue and enhance the District and that:

> "The means adopted for this purpose are the restriction of certain vehicular traffic, the mobile food venders. This is a rational, reasonable, legitimate means. And it is conceivable that the City Council found to its satisfaction that the mobile food vendors do cause traffic and pedestrian congestion and do cause littering in the District.
>
> \* \* \*
>
> \* \* \* [T]he City Council has a rational purpose in seeking to enhance the District created by the State for a special purpose."

Plaintiff Vargas alone pursued the appeal which won reversal by the appellate court. Defendants now appeal to this court.

It is well established that unless an enactment impinges on a fundamental personal right or is drawn upon

an inherently suspect classification, it is presumptively valid (*Lindsey v. Normet* (1972), 405 U.S. 56, 71, 31 L. Ed. 2d 36, 49, 92 S. Ct. 862, 873; *In re Estate of Karas* (1975), 61 Ill. 2d 40, 47), and it will survive constitutional scrutiny if it is rationally related to a legitimate governmental purpose (*Pension Benefit Guaranty Corp. v. R.A. Gray & Co.* (1984), 467 U.S. 717, 730, 81 L. Ed. 2d 601, 611-12, 104 S. Ct. 2709, 2718; *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 368; *Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 120). One who challenges an ordinance as failing this test of minimum rationality bears the burden of proving "by clear and affirmative evidence that the ordinance constitutes arbitrary, capricious and unreasonable municipal action; that there is no permissible interpretation which justifies its adoption, or that it will not promote the safety and general welfare of the public." *City of Decatur v. Chasteen* (1960), 19 Ill. 2d 204, 210; *Petterson v. City of Naperville* (1956), 9 Ill. 2d 233, 246-47.

It is unquestioned that the ordinance before us concerns regulation in the socio-economic sphere, and neither encroaches upon a fundamental right nor draws lines which create an inherently suspect classification. The majority of the appellate court, however, found that in several respects the ordinance is not reasonably related to its "stated purpose."

In identifying the city council's objective in enacting this ordinance, the appellate court seized upon the purpose stated in the preamble to an earlier version of the ordinance; namely, "to provide conditions most favorable for the special care of the sick and injured and for the study of disease" in the District. This preamble was deleted from the final version of the ordinance which was actually adopted by the city council. In any event, the preamble should not have been used as a means of inval-

idating the ordinance. A declaration of policy or a preamble is not a part of the act itself. (*Brown v. Kirk* (1976), 64 Ill. 2d 144, 152, citing *Yazoo & Mississippi Valley R.R. Co. v. Thomas* (1889), 132 U.S. 174, 188, 33 L. Ed. 302, 308, 10 S. Ct. 68, 73; *Bissette v. Colonial Mortgage Corp.* (D.C. Cir. 1973), 477 F.2d 1245, 1246 n.2.) While a policy section, like a preamble, may be used to clarify ambiguous portions of an act, it may not be used to create an ambiguity in a statute or an ordinance. (*Brown v. Kirk* , 64 Ill. 2d at 152, quoting J. Sutherland, Statutes & Statutory Construction §§20.03, 20.12, 47.04 (4th ed. 1972).) Statutes and ordinances should be construed in such a manner as to avoid doubts as to their validity. (*People v. Haywood* (1987), 118 Ill. 2d 263, 271; *Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 363.) As the dissenting justice in the appellate court noted, "The majority, by suggesting that the evidence fails to support the [preamble to] the ordinance, creates an ambiguity between the ordinance itself and its statement of policy." 174 Ill. App. 3d at 678 (Murray, J., dissenting).

In *City of New Orleans v. Dukes* (1976), 427 U.S. 297, 49 L. Ed. 2d 511, 96 S. Ct. 2513, the Supreme Court upheld an ordinance which prohibited vendors from selling foodstuffs from pushcarts in the French Quarter of the city of New Orleans. The ordinance excepted vendors who had continuously operated within the French Quarter for eight years prior to enactment of the ordinance. In rejecting the petitioner's argument that the ordinance denied her equal protection of the law, the Court stated that the ordinance rationally furthered the purpose of preserving " 'the appearance and custom valued by the Quarter's residents and attractive to tourists.' [Citation.] The legitimacy of that objective is obvious." 427 U.S. at 304, 49 L. Ed. 2d at 517, 96 S. Ct. at 2517.

Defendants in the present case assert that the ordinance here enhances the professional appearance and ambience of the District. This, in turn, serves to protect against a decline in property values and to attract professional medical personnel and medical clients to the District. Defendants further argue that the ordinance prevents pedestrian and vehicular congestion within the area surrounding the medical facilities in the District. Additionally, defendants contend that since some customers of mobile food vendors tend to discard food and wrappers on the ground, the ordinance acts to ameliorate or prevent sanitation problems within the District. These are all legitimate governmental objectives. The General Assembly fashioned the District to facilitate the growth and development of a major medical center in Chicago and to preserve the facilities already in operation there. The city council could validly seek to preserve and enhance this area in conformity with the General Assembly's plan. We further find that the ordinance is rationally related to these objectives.

The majority of the appellate court held that in several respects the ordinance is impermissibly overbroad. The court found that a "24-hour-a-day and 7-day-a-week entire ban of mobile food vendors from the entire District" was unnecessary, and that since a portion of the District is currently used for nonmedical purposes, the ordinance should not have included such areas. The court also found the ordinance overly broad in that it identifies the western boundary of the District as Western Avenue, whereas the correct western boundary of the District is Oakley Street, one block east of Western Avenue.

We cannot agree with the appellate court, however, that the means adopted by the Chicago city council to further the aforementioned objectives is so grossly overly broad as to render the ordinance arbitrary, capricious and unreasonable. The fit between the means and

the end to be achieved need not be perfect. "[R]ational distinctions may be made with substantially less than mathematical exactitude." (*City of New Orleans v. Dukes*, 427 U.S. at 303, 49 L. Ed. 2d at 517, 96 S. Ct. at 2517.) Statutory classifications need not be accurate, scientific or harmonious so long as they are not arbitrary and will accomplish the legislative objective. *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 372; *Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 123.

The appellate court construed the ordinance as prohibiting a mobile food vendor under any circumstances from even driving his or her mobile food vendor truck into or through the District. (174 Ill. App. 3d at 666.) This construction simply does not comport with the plain meaning of the language of the ordinance. The ordinance, on its face, only precludes a person from *conducting the business* of a mobile food vendor or peddler within the District. If the meaning of a statute or an ordinance is clearly expressed in the language of the statute or ordinance, the courts cannot imply any other meaning. *City of Decatur v. German* (1924), 310 Ill. 591, 595.

This court has held that a city has the power to regulate or prohibit the use of its streets for private gain. (*Olsen v. City of Chicago* (1962), 25 Ill. 2d 292; *City of Decatur v. Chasteen* (1960), 19 Ill. 2d 204.) In *Good Humor Corp. v. Village of Mundelein* (1965), 33 Ill. 2d 252, this court held that an ordinance prohibiting the peddling of food and other products on any of the public ways of Mundelein was not an unreasonable exercise of the power delegated to the village by the General Assembly. Similarly, in *City of Chicago v. Rhine* (1936), 363 Ill. 619, this court upheld an ordinance prohibiting sales of any articles, except newspapers, within a downtown area of Chicago commonly known as the Loop.

The power of Chicago to regulate its streets in the manner it has chosen here is even more evident than in *Good Humor* or *Rhine*. The City of Chicago is a home rule unit of local government under the 1970 Constitution (Ill. Const. 1970, art. VII, §6). The home rule unit provisions of the 1970 Constitution were designed to drastically alter the relationship which previously existed between local and State government. (*Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, 166.) As a result of these provisions, Chicago draws its power to "regulate for the protection of the public health, safety, morals and welfare" directly from the constitution. (Ill. Const. 1970, art. VII, §6(a).) This power is not dependent upon any grant of authority by the General Assembly, as was the case prior to 1970. Article VII, section 6(i), of the 1970 Constitution provides:

> "Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive."

Home rule units thus have the same powers as the sovereign, except where such powers are limited by the General Assembly. *City of Urbana v. Houser* (1977), 67 Ill. 2d 268, 273.

The only statute applicable to this case is the Medical Center District Act, which expressly provides that the Act is not to be construed as impairing any power possessed or granted to the city "except such as are expressly granted to the Commission by Section 8 of this Act." (Ill. Rev. Stat. 1987, ch. 111½, par. 5019.) Section 8 of the Act grants to the Medical Center Commission the power to improve and manage the District, "to provide conditions most favorable for the special care and treatment of the sick and injured and for the study of disease." Section 8 provides that the Commission shall

regulate and restrict the construction, location and use of buildings within the District, and control and regulate additions to, or alterations of, existing buildings. Section 8 also provides that the Commission, with the aid of the Chicago city plan commission, shall adopt appropriate zoning regulations for the District. (Ill. Rev. Stat. 1987, ch. 111½, par. 5018.) Section 8 nowhere limits the power of the city to regulate the city streets lying within the District.

The cases relied upon by the appellate court as warranting reversal of the trial court involved ordinances enacted by non-home-rule units of government. (*Springfield Park District v. Buckley* (1986), 140 Ill. App. 3d 524 (ordinance adopted by the Springfield park district prohibiting motorcycles within any park in the park district); *Rocking H. Stables, Inc. v. Village of Norridge* (1969), 106 Ill. App. 2d 179 (Norridge ordinance forbidding any person to ride a horse on the public ways of the village); *Salomone v. City of Canton* (1961), 30 Ill. App. 2d 474 (Canton ordinance prohibiting all parking along a two-mile section of Route 78).) In each of these cases the court held the ordinance invalid because it was not a reasonable exercise of the power delegated to a non-home-rule unit by the General Assembly. The court in these cases thus did not reach the constitutional issue that we address here.

A case more in point is *Vaden v. Village of Maywood* (7th Cir. 1987), 809 F.2d 361. In *Vaden,* the court upheld an ordinance banning the operation of mobile food vending businesses in Maywood from 8 a.m. to 4 p.m. on any day between August 25 and June 30, when a public elementary or secondary school was in operation. The court held that the restriction was rationally related to the legitimate goal of preventing children from being delayed and distracted while traveling to and from school. (*Vaden,* 809 F.2d at 364-66.) Similarly, in *Dukes* the Su-

preme Court, after holding that New Orleans had a legitimate interest in preserving the appearance and custom of the French Quarter, stated that the city council could further this objective by making the reasoned judgment that street peddlers and hawkers "tend to interfere with the charm and beauty" of the Quarter and "might thus have a deleterious effect on the economy of the city." (*Dukes*, 427 U.S. at 304-05, 49 L. Ed. 2d at 517, 96 S. Ct. at 2517.) The city council of New Orleans thus properly determined that such businesses should be "substantially curtailed *** if not totally banned." *Dukes*, 427 U.S. at 305, 49 L. Ed. 2d at 517-18, 96 S. Ct. at 2517.

Plaintiff attempts to distinguish the present case from *Vaden* and *Dukes* on the basis that the ordinance here is not in any way restricted in the time of its application, as was the ordinance in *Vaden*. Nor does it contain a grandfather provision like the ordinance in *Dukes*, which might save some mobile food vendor businesses within the District. There is no indication that these features were determinative in either *Vaden* or *Dukes*. Moreover, here we deal with a medical center. The business of providing medical care for the sick and injured is, by necessity, a "24-hour-a-day and 7-day-a-week" business. Certainly, the city's interest in ensuring that emergency vehicles, medical personnel and medical clients will have easy access to the medical facilities within the District is an interest which does not begin or end at any particular hour of the day or on any particular day of the week. Nor are the city's interests in enhancing the appearance of the District and promoting sanitary conditions therein tied to certain hours of the day or days of the week. We simply cannot say that this ordinance is irrational in these respects.

Neither can we say that the ordinance is irrational in its geographic scope. Plaintiffs argue, and the appellate court agreed, that the ordinance is invalid because it en-

compasses areas used for nonmedical purposes and it misstates the correct western boundary of the District. It should first be noted that plaintiffs have not alleged, nor does the evidence suggest, that they conduct their mobile food vending businesses anywhere other than that portion of the District where medical activity is currently concentrated. A party may not question the constitutional validity of a statutory provision unless he has sustained, or is in immediate danger of sustaining, some direct injury as a result of enforcement of the provisions (*People v. Esposito* (1988), 121 Ill. 2d 491, 512), or unless the unconstitutional feature is so pervasive as to render the entire act invalid (*People v. Mayberry* (1976), 63 Ill. 2d 1, 6; *Huckaba v. Cox* (1958), 14 Ill. 2d 126, 129). Moreover, the city defendants have acknowledged throughout these proceedings that the city council intended the restriction in the ordinance to extend only to the correct western boundary of the District, and that the ordinance should be construed to conform with this intent.

The District, in its entirety, is an area set aside by the General Assembly for the development and expansion of medical and allied activity. The power of the city council to promote optimum safe conditions and a professional atmosphere in this area, vital to the health and well-being of the public, certainly extends to the general territory surrounding the current nucleus of medically related activity. While the extent of this power is restricted by the principle of rationality, it is not necessarily limited by the District boundaries delineated by the General Assembly. However, the ordinance prohibits the conducting of mobile food dispenser or peddler business "within the boundaries of the Medical Center District." Its enforcement should be limited to the District. The fact that the western boundary of the District may have

been erroneously defined does not render the ordinance invalid.

The appellate court apparently attached great significance to the fact that the city council conducted no formal study of the impact of mobile food vending on the District prior to the passage of the ordinance. This matter, of course, has nothing to do with the validity of this type of ordinance. (*Oak Park National Bank v. Village of Broadview* (1963), 27 Ill. 2d 151, 154-55.) We reiterate that this court will not sit as a superlegislature "to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines [citation]; in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment. [Citation.]" (*Dukes*, 472 U.S. at 303-04, 49 L. Ed. 2d at 517, 96 S. Ct. at 2517. See also *Ferguson v. Skrupa* (1963), 372 U.S. 726, 731-32, 10 L. Ed. 2d 93, 98, 83 S. Ct. 1028, 1032; *Hayen v. County of Ogle* (1984), 101 Ill. 2d 413, 421.) " 'It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.' " *Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 369, quoting *Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 487-88, 99 L. Ed. 563, 572, 75 S. Ct. 461, 464.

In sum, the city council could reasonably determine that mobile food vendors do detract from the professional atmosphere of the District, and it could legitimately seek to remedy the situation. It could also legitimately seek to avoid or minimize litter and congestion in the streets of this area. The prohibition of mobile food vending activity within the District is a rational means of attaining these objectives.

We further disagree with the appellate court's holding that the ordinance divested plaintiffs of their food-dispensing licenses, and that plaintiffs were thus entitled to notice that the city council would consider the ordinance, thus giving plaintiffs an opportunity to voice their objections prior to its enactment. Plaintiffs and the appellate court correctly cite a number of cases recognizing that the Federal Constitution imposes certain restrictions on the authority of a municipality to revoke or refuse to renew a business license. (*E.g.*, *Reed v. Village of Shorewood* (7th Cir. 1983), 704 F.2d 943; *Gallagher & Ascher Co. v. Simon* (7th Cir. 1982), 687 F.2d 1067; *In re Ming* (7th Cir. 1972), 469 F.2d 1352.) The Municipal Code of Chicago, section 101—27, similarly provides that licenses, such as plaintiffs', issued under the authority of the code cannot be revoked or suspended unless the licensees have first been given notice and a public hearing. The threshold question here, however, is whether the enactment of this ordinance constituted a revocation of plaintiffs' food-dispensing licenses. We hold that it did not.

The granting of plaintiffs' licenses did not abrogate the city's power to legislate for the public health, morals and general welfare. "It is presumed, absent unequivocal language, that a city, in granting a license, reserves the ability to exercise its police power and place additional regulatory burdens on license holders." (*Kennedy v. Hughes* (D. Del. 1984), 596 F. Supp. 1487, 1495, citing *City of St. Louis v. United Rys. Co.* (1908), 210 U.S. 266, 274, 52 L. Ed. 1054, 1058, 28 S. Ct. 630, 632.) Plaintiffs' licenses, on their face, provide that the licensees shall observe and comply with all ordinances of the City of Chicago. One such ordinance, in effect at the time plaintiffs' licenses were issued, permits the city council to designate areas in which peddling is prohibited. Chicago Municipal Code §36—49.1.

In *Fireside Chrysler-Plymouth, Mazda, Inc. v. Edgar* (1984), 102 Ill. 2d 1, we recognized the authority of the legislature to impose additional restrictions on licensees without running afoul of the fourteenth amendment. There we upheld a Sunday closing law applicable only to automobile dealer licensees. In *Vaden*, the court held that the substantial restrictions imposed on mobile food-dispensing licensees did not deprive plaintiff of any property right which would invoke special procedural due process requirements. The court noted that in such cases the due process protection to which the licensee is entitled is substantive rather than procedural. *Vaden*, 809 F.2d at 364; see also *Bec-N-Call, Inc. v. Village of Steger* (1979), 75 Ill. App. 3d 957, 959 (holding that an ordinance provision restricting the hours of alcohol sales did not constitute a "20% revocation" of plaintiffs' liquor licenses and thus did not invoke the notice and hearing requirements contained in the Dramshop Act); *Kennedy v. Hughes* (D. Del. 1984), 596 F. Supp. 1487, 1496 (holding that an ordinance requiring the presence of a physician or an osteopath whenever a tattoo was applied did not constitute a *de facto* revocation of plaintiffs' business licenses, even though the ordinance imposed a substantial burden on plaintiffs' use of the licenses).

The ordinance in the instant case, like the statute and the ordinances in the cases cited above, is a valid restriction on the use of plaintiffs' licenses in the interest of the public health, safety and welfare. It is not a revocation of plaintiffs' licenses. By virtue of their licenses, plaintiffs are authorized to conduct their mobile food vending businesses throughout the City of Chicago, which encompasses well over 200 square miles. The ordinance in question merely prohibits plaintiffs from conducting this business in a section of the city covering roughly one square mile. Plaintiffs are thus free to use their licenses in all other unrestricted areas of the city.

Plaintiffs argue, however, that the ordinance must constitute a revocation of their licenses since they have conducted their mobile food vending businesses continuously and exclusively within the District for a number of years and because it is very difficult to establish a new mobile food vending route.

Plaintiffs seem to suggest that through long and continued operation of their businesses within the District, they have become vested with some property interest in continuing to do so. We disagree. In *Good Humor Corp. v. Village of Mundelein* (1965), 33 Ill. 2d 252, the plaintiff corporation had been engaged in the business of selling ice cream on the streets of Mundelein for 15 years. In upholding a village ordinance which prohibited all such peddling, this court held that plaintiff had no property right in continuing to conduct its business there. (*Good Humor Corp.*, 33 Ill. 2d at 259.) Similarly, in *City of Decatur v. Chasteen* (1960), 19 Ill. 2d 204, 211-12, this court stated that no one has any inherent right to use the streets or highways for business purposes. The court explained that a city may validly regulate or prohibit such uses and that "the power to exclude includes, for the most part, the power to permit upon conditions." The court then held that an ordinance requiring defendants, who operated a "livery business" in Decatur, to install taximeters in their livery cars and to obtain taxicab licenses in order to operate on the public streets did not deprive defendants of liberty or property without due process. It is apparent in the present case that while plaintiffs may have had a right to use the streets of Chicago by reason of their licenses, they have no due process right against the city's subsequent regulation of those streets in the valid exercise of the city's police power.

The city is simply not required to give prior notice and a due process hearing to every individual who may

be adversely affected by a regulation under consideration. (*Association of National Advertisers, Inc. v. Federal Trade Comm'n* (D.C. Cir. 1979), 627 F.2d 1151, 1165.) In the familiar language of Justice Holmes:

> "Where a rule of conduct applies to more than a few people it is impracticable that every one should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule." *Bi-Metallic Investment Co. v. State Board of Equalization* (1915), 239 U.S. 441, 445, 60 L. Ed. 372, 375, 36 S. Ct. 141, 142.

While plaintiffs do not contest that notice and a hearing are generally not prerequisites to legislative action, they argue that more is required here because the ordinance affects only a "tiny class of people" and thus does not apply "across the board." (See *Philly's v. Byrne* (7th Cir. 1984), 732 F.2d 87, 93 (*dictum*).) We observe, however, that this ordinance is not exclusively applicable to the plaintiffs who brought these actions. It applies to all mobile food vendor licensees in the City of Chicago and to anyone else who may desire to conduct a mobile food vending business within the District. As such, the ordinance is one of general application, and falls within the scope of the general rule.

For the above reasons, the judgment of the appellate court is reversed and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*