LUCY GARCIA, Plaintiff-Appellee, v. THE CITY OF CHICAGO, Defendant-Appellant.

First District (6th Division)   No. 1—91—3156

Opinion filed December 18, 1992.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Brian Trubitt, Assistant Corporation Counsel, of counsel), for appellant.

Michael W. Rathsack, of Chicago (Louis S. Goldstein and Cindy G. Fluxgold, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Lucy Garcia, 27 years of age, brought this action against defendant, City of Chicago (the City), for injuries sustained while riding her bicycle on a City sidewalk. She charged that the City was negligent in the maintenance of its sidewalk. The City raised the application of section 9—52—020(b) of the Chicago Municipal Code (1992) prohibiting bicycle riding on the sidewalks by persons over 12 years of age as an affirmative defense in conjunction with section 3—102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1989, ch. 85, par. 3—102(a)).

The trial court, however, found that the ordinance was unconstitutional as violative of the equal protection clause. The case proceeded to a jury trial, with no mention of the ordinance to be made to the jury. The jury returned a verdict in favor of plaintiff in the amount of $37,074.35, but reduced the award to $21,255.96 due to her comparative negligence. The trial court entered judgment on the verdict and denied the City's post-trial motion. The City appeals. The sole question before us is whether the trial court erred in finding the ordinance unconstitutional.

The facts are undisputed. At midday on July 17, 1984, plaintiff was riding her bicycle on a sidewalk in the City of Chicago. At one end of the sidewalk was a six-inch drop-off in the pavement. Plaintiff did not see the drop-off and rode her bicycle over it, causing her to tumble over her handbars and fall to the ground. Plaintiff fractured both of her wrists in the fall.

Section 9—52—020(b) of the Municipal Code states:

"No person 12 or more years of age shall ride a bicycle upon any sidewalk in any district, unless such sidewalk has been officially designated and marked as a bicycle route." Chicago Municipal Code §9—52—020(b) (1992).

Section 3—102(a) of the Tort Immunity Act provides:

"(a) Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that it is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." Ill. Rev. Stat. 1989, ch. 85, par. 3—102(a).

The trial court concluded that section 9—52—020(b) violated the equal protection clause of the Constitution because it arbitrarily treats people under the age of 12 differently than those over that age. Accordingly, the trial court held that defendant could not rely on the ordinance as a defense.

In *Prokes v. City of Chicago* (1991), 208 Ill. App. 3d 748, 567 N.E.2d 592, this court, in determining the applicability of section 3—102(a) of the Tort Immunity Act to that cause, addressed whether the plaintiff was an intended and permitted user of a City sidewalk, given the manner in which he had used it. As in this case, the plaintiff was a bicyclist over the age of 12 who was injured while riding his bicycle on a City sidewalk, in violation of section 9—52—020(b) of the Municipal Code. Noting the language of that section, this court held that "bicycle riding by adults on sidewalks is expressly prohibited and is, therefore, not a contemplated or permitted use by the plaintiff." Accordingly, the court held that the City's motion to dismiss should have been granted by the trial court. (*Prokes*, 208 Ill. App. 3d at 750, 567 N.E.2d at 593.) Thus, setting aside the constitutionality question, it is apparent that plaintiff here was not an intended or permitted user of the sidewalk, as she was over the age of 12 and was riding her bicycle on a sidewalk which had not been officially designated and marked as a bicycle route. However, because the constitutionality of the ordinance was not addressed by this court in *Prokes*, we must go one step further to address that issue here.

At the outset, we note that the trial judge did not specify whether he was relying on the United States Constitution or the Illinois Constitution in ruling that section 9—52—020(b) was unconstitutional. Nevertheless, Illinois courts use the same analysis in assessing equal protection claims under both the Federal and State Constitutions. *People v. Reed* (1992), 148 Ill. 2d 1, 591 N.E.2d 455.

■ Under Illinois constitutional law, it is well established that unless a legislative enactment impacts a fundamental right or discriminates against a suspect class, it is presumptively valid (*Triple A Services, Inc. v. Rice* (1989), 131 Ill. 2d 217, 226, 545 N.E.2d 706, 709), and it will survive constitutional scrutiny if it is rationally related to a legitimate governmental purpose. (*Triple A Services*, 131 Ill. 2d at 226, 545 N.E.2d at 709; *County of Bureau v. Thompson* (1990), 139 Ill. 2d 323, 335, 564 N.E.2d 1170, 1177.) Federal cases are in accord. (See *Massachusetts Board of Retirement v. Murgia* (1976), 427 U.S. 307, 49 L. Ed. 2d 520, 96 S. Ct. 2562.) Moreover, the court need not inquire into what the legislature's actual objective was; if the court can think of any set of facts that will sustain the legislative classification, the statute will be upheld. (*Village of Oak Lawn v. Rosewell* (1986), 113 Ill. 2d 104, 116, 497 N.E.2d 734, 737; *Szczurek v. City of Park Ridge* (1981), 97 Ill. App. 3d 649, 657, 422 N.E.2d 907, 913.) Further, the means chosen to achieve that governmental objective need not be the best possible means; they need only be measures that a rational person could believe might help in some way to achieve the objective. *Minnesota v. Clover Leaf Creamery Co.* (1981), 449 U.S. 456, 466, 66 L. Ed. 2d 659, 670, 101 S. Ct. 715, 725.

■ We note that a party who challenges an ordinance as failing this test of "minimum rationality" must prove " 'by clear and affirmative evidence that the ordinance constitutes arbitrary, capricious and unreasonable municipal action; that there is no permissible interpretation which justifies its adoption, or that it will not promote the safety and general welfare of the public.' " *Triple A Services*, 131 Ill. 2d at 226, 545 N.E.2d at 709, quoting *City of Decatur v. Chasteen* (1960), 19 Ill. 2d 204, 210, 166 N.E.2d 29, 33.

Plaintiff has not contended that section 9—50—020(b) of the Municipal Code impacts a fundamental right or discriminates against a suspect class. Thus, the minimum rationality test applies, and the ordinance will be declared unconstitutional only if the distinction between those over the age of 12 and those below that age bears no possible rational relationship to any legitimate municipal objective. See *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108

Ill. 2d 357, 483 N.E.2d 1245; *Triple A Services*, 131 Ill. 2d 217, 545 N.E.2d 706.

As the City points out, there are several rational justifications for this ordinance. The ordinance seeks to protect pedestrians, for whose use sidewalks are primarily intended, by requiring teenage or adult bicyclists to use the streets along with other vehicular traffic. The ordinance protects young children just learning to ride bicycles by allowing them to ride on the sidewalks instead of on the street where they might be injured by other vehicles. Moreover, the inconvenience caused to pedestrians by allowing small children to ride on the sidewalks in residential neighborhoods is significantly outweighed by the danger created by forcing small children to ride in the street. It is reasonable to believe that smaller children—those under the age of 12—ride at such slower speeds compared to teenagers and adults so that pedestrians would not be significantly endangered by having these smaller children ride on the sidewalks.

Furthermore, because of the relatively faster speeds traveled by older bicyclists, they are more likely to fail to see a curb and be injured if they ride over it, as in this case. By contrast, young children are more likely to travel at slower speeds and be supervised by adults who can help them negotiate curbs. Thus, another purported objective of the ordinance is to protect bicyclists over the age of 12 from being injured while riding on City sidewalks.

In *Gregory v. Ashcroft* (1991), 501 U.S. 452, 471, 115 L. Ed. 2d 410, 430, 111 S. Ct. 2395, 2406, the United States Supreme Court reiterated the longstanding rule that laws which distinguish different groups on the basis of age will not be overturned unless " 'the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational.' " (Quoting *Vance v. Bradley* (1979), 440 U.S. 93, 97, 59 L. Ed. 2d 171, 176, 99 S. Ct. 939, 943.) That is not the case here. On the contrary, we find the objectives to be legitimate and the ordinance at issue to be rationally related to these objectives.

■ Since we have determined that the ordinance is rationally related to the achievement of one or more legitimate governmental objectives, we necessarily approve of the "bright line" distinction in the ordinance between bicyclists over the age of 12 and those under 12. As the City correctly points out, the ordinance must give notice of exactly what conduct is prohibited to avoid a vagueness challenge, and a line must accordingly be drawn somewhere. Legislatures engage in line drawing at every turn, whether, for instance, in setting

the speed limit, establishing the legal drinking age, or determining at what age a person may obtain a driver's license. In *Village of Belle Terre v. Boraas* (1974), 416 U.S. 1, 39 L. Ed. 2d 797, 94 S. Ct. 1536, the United States Supreme Court recognized that since " 'there is no mathematical or logical way of fixing [a line] precisely, the decision of the legislature must be accepted unless we can say that it is very wide of any reasonable mark.' " (*Village of Belle Terre*, 416 U.S. at 8 n.5, 39 L. Ed. 2d at 804 n.5, 94 S. Ct. at 1540 n.5, quoting *Louisville Gas & Electric Co. v. Coleman* (1928), 277 U.S. 32, 41, 72 L. Ed. 770, 775, 48 S. Ct. 423, 426 (Holmes, J., dissenting).) Indeed, we cannot say that the City's decision to draw the line at the age of 12 is "very wide of any reasonable mark."

In sum, we conclude that section 9—50—020(b) of the Municipal Code bears a rational relationship to one or more legitimate governmental objectives, and for this reason we find the ordinance to be constitutional. Accordingly, we do not find Garcia to be an intended and permitted user under section 3—102(a) of the Tort Immunity Act.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

EGAN, P.J., and RAKOWSKI, J., concur.