3 November 1999

No. 3--98--0662

_________________________________________________________________

IN THE 

APPELLATE COURT OF ILLINOIS 

THIRD DISTRICT

A.D., 1999 

DANIEL DIEFENDORF,   ) Appeal from the Circuit Court

   ) for the Tenth Judicial Circuit

 Plaintiff-Appellant,       ) Peoria County, Illinois

                       )

v.                          )

                            )

THE CITY OF PEORIA,         )

                            )

 Defendant-Appellee         )

 and Third-Party Plaintiff. )

                            ) No.  96 L 174

v.                          )

           )

Greater Peoria Sanitary     )

District                    )

                            )

 Third-Party Defendant.     )

        ) Honorable Bruce W. Black

                            ) Presiding Judge

_________________________________________________________________

JUSTICE KOEHLER delivered the opinion of the court:

_________________________________________________________________

The plaintiff in this negligence action, Daniel Diefendorf, appeals the circuit court of Peoria County's grant of summary judgment in favor of the defendants, City of Peoria (Peoria) and the Greater Peoria Sanitary District (District).  The issue on appeal is:  Did the circuit court err in concluding no genuine issue of material fact existed because the plaintiff was not both an intended and permitted user of the sidewalks and the defendants, therefore, did not owe a duty to the plaintiff to maintain the sidewalk in a safe condition?  Because we conclude that the circuit court did not err, we affirm. 

FACTS

 The plaintiff, Daniel Diefendorf, was injured when he fell from his bicycle while he was riding on the sidewalk in Peoria.  As the plaintiff rode, the bicycle came to a sudden stop when the front tire hit a manhole cover.  Consequently, the plaintiff pitched over the bicycle's handlebars, hit the ground, and broke his arm.  According to the plaintiff, the manhole cover and a bracket attached to it rose approximately six inches from the sidewalk and was concealed from view by two-foot-high weeds and grass growing over the area.  The plaintiff alleged that the growth also concealed a four-inch "fracture" in the sidewalk.   

The plaintiff filed a negligence action against Peoria for failure to use reasonable care in the maintenance and upkeep of its property by:  (1) pouring a sidewalk which allowed the manhole and assembly to protrude approximately six inches above the sidewalk; (2) failing to repair the break in the sidewalk; (3) failing to cut the weeds and grass which had allegedly grown on the sidewalk to a height of two feet; and (4) failing to warn of the unsafe conditions when the city knew or, in the exercise of reasonable care, should have known of the dangerous condition prior to the time of the accident.  The plaintiff filed an amended complaint to include a negligence count against nearby property owners alleging that they breached their duty to use reasonable care in the maintenance and upkeep of their property adjacent to the city sidewalk.  Peoria filed a third-party complaint for contribution against the District pursuant to the Illinois Joint Tortfeasor Contribution Act.  740 ILCS 100/0.01 (West 1996).  

The circuit court granted the property owners' motion for summary judgment, and later granted Peoria's motion for summary judgment, concluding that the plaintiff was not an intended user of the sidewalk as required under the Local Governmental and Governmental Employee Tort Immunity Act (Act) (745 ILCS 10/3--

102(a) (West 1996)) and, as a consequence, Peoria did not owe a duty to the plaintiff.  The circuit court granted the District's motion for summary judgment on the same ground.  The plaintiff now appeals. 

ANALYSIS

Summary judgment should be granted only when the pleadings, depositions, and admissions on file, together with any affidavits, show there is no genuine issue of material fact when construed in the light most favorable to the nonmoving party; therefore, the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2--1005(c) (West 1996).  The reviewing court's function is limited to a determination of whether the circuit court correctly concluded that no genuine issue of material fact had been raised and, if none was raised, whether judgment as a matter of law was correctly entered.  
Fuller v. Justice
, 117 Ill. App. 3d 933, 938, 453 N.E.2d 1133, 1136 (1983).  Accordingly, this court's review of a grant of summary judgment is 
de novo
.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co
., 154 Ill. 2d 9
0, 102, 607 N.E.2d 1204, 1209 (1992).

To state a cause of action for negligence, the plaintiff must show that: (1) the defendant owed him a duty of care; (2) that the defendant breached that duty; and (3) the plaintiff suffered injury proximately caused by the breach.  
Curtis v. County of Cook
, 98 Ill. 2d 158, 162, 456 N.E.2d 116 (1983).  The municipality's duty is limited by the language of the Act which reads as follows:

"Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity 
intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used ***."  745 ILCS 10/3--102(a) (West 1996).  

The Act continues the common law duties of a municipality. 
Larson v. City of Chicago
, 142 Ill. App. 3d 81, 83, 491 N.E.2d 165, (1986).  Under the Act, a municipality has only a duty of care to maintain property for uses that are both permitted and intended.  
Vaughn v. City of West Frankfort
, 166 Ill.2d 155, 160, 651 N.E.2d 1115, 1117 (1995).  "
[F]oreseeability
, pursuant to the language of the *** Act, pertains to 
use
 of the municipality's property by permitted and intended users, 
not to foreseeable users
 *** '
in a manner
 in which and at such times as 
it was reasonably foreseeable it would be used.'
 (Emphasis added.)"  
Risner v. City of Chicago
, 150 Ill. App. 3d 827, 831, 502 N.E.2d 357, 359-60 (1986), quoting Ill.Rev.Stat. 1983, ch. 85, par. 3--102.

The plaintiff argues that both the Peoria City Code (code) and the "Peoria Bicycling Map and Resource Guide" (map) evidence  Peoria's intent that bicyclists are to use the sidewalks.  Additionally, the plaintiff argues that bicyclists have historically used the sidewalk and such use is foreseeable; therefore, Peoria breached its duty to the plaintiff.  The plaintiff further contends that, as a consequence of our supreme court's holding in 
Boub v. Township of Wayne
, 183 Ill. 2d. 520, 702 N.E.2d 535 (1998), bicyclists are not intended users of highways and roadways.  Accordingly, he asserts that this court should determine that bicyclists are similar to pedestrians and are intended users of sidewalks.  Lastly, the plaintiff argues that Peoria need only pass an ordinance prohibiting use of sidewalks by bicyclists to indicate that they are not intended users. 

The defendants concede that the plaintiff was a permitted user of the sidewalk; however, they argue that he was not an intended user of the sidewalk.  The defendants contend that section 28--2 of the code, which defines sidewalks as intended for the use of pedestrians, thereby indicates that bicyclists are merely permitted users of the sidewalk.  City of Peoria Code, Ch. 28, Section 28--2 (1957).  They argue that the map provides further evidence that bicyclists are permitted, but not intended, because the map establishes routes upon streets, and not upon sidewalks.  Finally, the defendants argue that the lack of markings or physical signs describing the sidewalk as a bicycle route clearly shows Peoria's lack of intent to make it such.

Under the Act, it is the intent of the local public entity that controls, and we, therefore, look to the code to determine the intended users of Peoria's sidewalks.  
Boub
, 183 Ill. 2d at 525, 702 N.E.2d at 538.   The code defines a sidewalk as "[t]hat portion of a street between the curb lines, or the lateral lines of a roadway, and the adjacent property lines, 
intended for use of pedestrians."  City of Peoria Code, Ch. 28, Section 28--2 (1957). A "pedestrian" is "any person afoot" and a "bicycle" is "every device propelled by human power upon which any person may ride, having two tandem wheels except scooters and similar devices."  City of Peoria Code, Ch. 28, Section 28--2 (1957).  It is clear from the code that bicyclists are permitted users of its sidewalks.  However, the code fails to expressly designate bicyclists as intended users, but it does expressly designate pedestrians as its intended users.

The code further provides that "[a] person propelling a bicycle upon and along a sidewalk *** shall have all the rights and duties applicable to a pedestrian under the same circumstances."  City of Peoria Code, Ch. 28, Section 28--498(c) (1957).  This provision is, for all intents and purposes, identical to the Illinois Vehicle Code provision providing that bicyclists upon highways "shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of a vehicle by this Code."  625 ILCS 5/11--1502 (West 1996).  Our supreme court recently interpreted the Illinois Vehicle Code to mean that bicyclists are not intended users of the roadways.  Rather, it concluded that the language is designed to ensure that they follow traffic laws for safety purposes while using the roadways.  
Boub
, 183 Ill. 2d at 530, 702 N.E.2d at 540.  Following our supreme court's conclusion that the language does not reflect intent, we cannot hold that the language contained in the code means that bicyclists are intended users of city sidewalks.

Furthermore, we note that other code provisions, when considered with those already discussed, suggest that a bicyclist is an intended user of the sidewalks in some circumstances.  Specifically, the code defines "parade" as "a group of persons *** in a public procession *** on city-owned parks, streets, sidewalks, or other public grounds *** [and] shall include road races, walk-a-

thons, bike-a-thons and similar money-raising events."  City of Peoria Code, Ch. 21, Section 21--1 (1957).  Additionally, the code prohibits bicycles without license tags from riding on city streets or public ways but exempts "sidewalk bikes, scooter bikes, junior bikes or any other type of bicycle with a tire of 20 inches or less."  City of Peoria Code, Ch. 28, Section 28--142 (1957).  As we concluded in 
Brooks v. City of Peoria
, No. 3–98–0505, slip op. at 3, (June 15, 1999), we interpret the code language as contemplating that some bicyclists, in some circumstances, may be intended users of Peoria's sidewalks.  We conclude, however, that this language does not indicate that all bicyclists are intended users of Peoria's sidewalks.

   In addition to interpreting statutory language pertaining to bicycle riders, the 
Boub
 court looked to physical manifestations, including markings and signs, as well as to historical use, in its analysis.  
Boub
, 183 Ill. 2d at 528, 702 N.E.2d at 539.  Whether a particular use of property is permitted and intended is to be determined by looking at the property itself.  
Vaughn
, 166 Ill. 2d at 160, 651 N.E.2d at 1118.  We, therefore, look to physical manifestations that Peoria intended bicyclists to use its sidewalks.  
The bicycle map states that bicyclists are permitted users of sidewalks and articulates rules that bicyclists must follow when using the sidewalks.  Those rules include yielding right of way to pedestrians, watching for cars in crosswalks and driveways, and watching for traffic before entering the street.  The map designates three classifications of bike paths; there are no sidewalks designated as bike paths.  The street in question is not designated under any of the classifications.  There is no evidence that the section of sidewalk on which the plaintiff was injured was marked in any way as intended for bicycle use.   Additionally, the map clearly states that "Illinois traffic laws apply to persons riding bicycles" and that "[b]icylists shall be subject to all duties applicable to drivers of a motor vehicle."  We conclude that the physical manifestations of the property indicate that bicyclists are permitted users of the sidewalks but do not believe that they indicate intended use. 

 In concluding, we note that common sense and public policy considerations support our conclusion that based upon this language, not all bicyclists are intended users of Peoria's sidewalks.  We agree with the court in 
Garcia v. City of Chicago
, 240 Ill. App. 3d 199, 608 N.E.2d 239 (1992), that there are "several rational justifications" for making distinctions between who is an intended user of city sidewalks and who is not (holding that a city ordinance allowing bicycle riding on sidewalks by persons 12 years of age or younger and prohibiting those over 12 years of age from riding on city sidewalks did not violate equal protection).  
Those justifications include: (1) the protection of pedestrians; (2) the protection of young children learning to ride bicycles who could be injured if riding on the streets; (3) the slower speeds of children and small bicycles and the lesser degree of danger they pose to others; and (4) the faster speed of adult bicyclists and, consequently, the greater likelihood that they will not see dangers along the sidewalk.  The language of the code, the nature of the property itself, and public policy considerations compel us to  conclude that bicyclists generally are not intended users of Peoria's sidewalks.  In the case before us, we conclude that the plaintiff was not an intended user of Peoria's sidewalks.  Furthermore, Peoria did not owe a duty to the plaintiff. 

     CONCLUSION

   In sum, the circuit court properly found that no genuine issue of material fact existed:  (1) the plaintiff was not an intended user of the city sidewalk; and (2) Peoria, therefore, did not owe a duty of care to the plaintiff.  Accordingly, we affirm. 

Affirm.

LYTTON, J., concurs.

JUSTICE BRESLIN dissenting:

The majority holds that bicyclists generally are not intended users of sidewalks and thus are not owed a duty of care.  I respectfully disagree with this conclusion for two reasons: (1) the majority’s decision heavily relies on 
Boub v. Township of Wayne
 (183 Ill. 2d 520, 702 N.E.2d 535 (1998)), a factually distinguishable case, while ignoring other cases more clearly on point; and (2) the majority reads foreseeability out of the Act.

In the last several years there have only been three published appellate court decisions that encompass the factual situation and issue presented by this case: Whether a municipality owes a duty to an adult bicyclist who injures himself while riding on one of its sidewalks. See 
Garcia v. City of Chicago
, 240 Ill. App. 3d 199, 608 N.E.2d 239 (1992); 
Lipper v. City of Chicago
, 233 Ill. App. 3d 834, 600 N.E.2d 18 (1992); 
Prokes v. City of Chicago
, 208 Ill. App. 3d 748, 567 N.E.2d 592 (1991).  Each of these cases turned on a City of Chicago ordinance which forbade anyone over 12 years of age from riding upon a sidewalk unless the sidewalk had been officially designated as a bicycle route. 
Garcia
, 240 Ill. App. 3d at 200-01, 608 N.E.2d at 241; 
Lipper
, 233 Ill. App. 3d at 837, 600 N.E.2d at 20; 
Prokes
, 208 Ill. App. 3d at 749-50, 567 N.E.2d at 593.
  While applying the Act, the appellate court in each case held that the Chicago
 ordinance showed that the plaintiff bicyclist was not an intended user of its sidewalks.  There is no such ordinance present in the case at bar.  Instead of recognizing this fact and analyzing the above-mentioned cases, the majority relies almost exclusively on 
Boub v. Township of Wayne
, 183 Ill. 2d 520, 702 N.E.2d 535 (1998).
  

In 
Boub
, the plaintiff was bicycling on a rural road/bridge when his injury occurred, while the plaintiff in this case, like the plaintiffs in 
Garcia
, 
Lipper
 and 
Prokes
, was injured while bicycling on a city sidewalk.  Rural roads and bridges differ markedly in nature from city sidewalks.
  Technically, a sidewalk is "that portion of a street between the curblines or the lateral lines of a roadway and the adjacent property lines, intended for the use of pedestrians."  City of Peoria Code, chapter 28, §28--2 (1957).  A roadway, on the other hand, is "that portion of a highway improved, designed or ordinarily used for vehicular travel."  City of Peoria Code, chapter 28, §28--2 (1957).
  
Besides these differences, sidewalks and roadways also differ as to their degree of regulation.  Common knowledge tells us that roadways are much more heavily regulated than sidewalks.  

Moreover, the policy considerations upon which the 
Boub
 court relied are not present in this case.  To the extent that 
Boub
 relied on the huge financial burden that would be faced by municipalities if bicyclists were held to be intended users of all public roadways, such concerns are simply not raised by the case at bar.  While road conditions that do not pose hazards to vehicles may represent dangers to bicycles, sidewalk conditions that are dangerous to bicyclists are also potentially hazardous to pedestrians.  The alleged condition of the sidewalk in this case, a manhole cover raised six inches above the surface of the sidewalk and a four-inch fracture in the sidewalk hidden by a growth of weeds two feet high, would certainly pose a danger to pedestrian and bicyclist alike.

Most importantly, in the wake of the 
Boub
 decision, it is unlikely that a bicyclist will ever be held to be an intended user of a municipal street or roadway unless that roadway has been specifically marked or otherwise designated as a bicycle route by the municipality.  Under the majority’s holding today, the same is true for municipal sidewalks: absent a designation or marking to the contrary, a bicyclist will never be an intended user of a municipal sidewalk.  Thus, as Justice Heiple warned in his 
Boub
 dissent, the following incongruous result has become a reality -- by simply removing all evidence that bicyclists are intended users of any city street or sidewalk, a loss-averse municipality can wholly immunize itself from liability. 
Boub
, 183 Ill.2d at 539-40, 702 N.E.2d at 545.  

The second reason for my disagreement with the majority is that it, like many other courts, has read foreseeability out of the Act.  Under the Act, a municipality has a duty to maintain its property in a reasonably safe condition for "people whom the entity 
intended and permitted
 to use the property in a manner in which and at such times as it was 
reasonably foreseeable
 that it would be used."  (Emphasis added.) 745 ILCS 10/3--102(a) (West 1998).  
Most courts interpreting the Act have seized upon the "intended and permitted" language, while few have acknowledged that portion of the Act which speaks of "reasonably foreseeable" usage.  The majority here makes the same mistake. 

One case decided under the Act that takes into account foreseeability is 
Larson v. City of Chicago
. 142 Ill. App. 3d 81, 491 N.E.2d 165 (1986).  In 
Larson
, the court was faced with the question of whether a rollerskater on a municipal sidewalk was owed a duty of care.  Recognizing that the Act simply continued the common law duties of a municipality, the 
Larson
 court found a duty, relying in part upon the long-held common law principle that "a municipality is required to maintain its streets and sidewalks 
in a reasonably safe condition for the amount and kind of travel which may be fairly expected upon them." 
 
Larson
 142 Ill. App. 3d at 84, 491 N.E.2d at 166.  The court also
 cited a line of New York cases that likewise holds that municipalities have an obligation to keep their sidewalks safe for all foreseeable users. See 
Errante v. City of New York
, 74 A.D.2d 122
, 427 N.Y.S.2d 18 (1980); 
Muallem v. City of New York
, 82 A.D.2d 420, 441 N.Y.S.2d 834 (1981); see also 
Barnes v. City of Tucson
, 157 Ariz. 566, 760 P.2d 566 (App. 1988).  Of particular significance to the case at bar, the 
Errante
 court refused to distinguish between rollerskaters, bicyclists and other users of city sidewalks. 
Errante
, 74 A.D.2d at 123, 427 N.Y.S.2d at 19
. 

    I believe that the reasoning in 
Larson
 is sound specifically in that it, unlike most other cases, apprehends the nature of the Act, which expressly takes into account the foreseeability of the use.  Thus, given the factual dissimilarity of the 
Boub
 case, I would follow 
Larson
 and hold that the City owed Daniel a duty of care.